**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| MEETRIX IP, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>Citrix Systems, Inc.,<br><br>       Defendant. | Civil Action No. 1:16-cv-1033 |
| MEETRIX IP, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>LogMeIn, Inc.,<br><br>       Defendant. | Civil Action No. 1:16-cv-1034 |

**DEFENDANTS CITRIX'S AND LOGMEIN'S MOTION TO DISMISS
THE COMPLAINTS BECAUSE THE ASSERTED PATENTS ARE
PATENT-INELIGIBLE UNDER 35 U.S.C. § 101**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 2

      A.    The '525 And '332 Patents ...................................................................... 3

      B.    The '997 Patent ...................................................................................... 5

III.  LEGAL STANDARD........................................................................................ 6

      A.    Motion To Dismiss ................................................................................. 6

      B.    Patent Eligibility Under 35 U.S.C. § 101............................................... 6

IV.   ARGUMENT ..................................................................................................... 9

      A.    The '525 And '332 Patent Claims Are Ineligible Under § 101 ............... 9

            1.    The '525 And '332 Patent Claims Are Directed To An Abstract
                  Idea.............................................................................................. 9

            2.    The '525 And '332 Patent Claims Add Nothing Inventive .................... 13

      B.    The '997 Patent Claims Are Ineligible Under § 101 ........................... 16

            1.    The '997 Patent Claims Are Directed To An Abstract Idea ................... 16

            2.    The '997 Patent Claims Add Nothing Inventive....................................... 19

      C.    The Machine-or-Transformation Test Confirms The Claims Ineligibility .......... 20

V.    CONCLUSION.................................................................................................. 20

<u>TABLE OF AUTHORITIES</u>

## CASES

*A Pty Ltd., v. Google, Inc.*,
   149 F. Supp. 3d 754 (W.D. Tex. 2016)........................................................................ 1, 8, 13

*A Pty Ltd., v. Google, Inc.*,
   Case No. 1:15-CV-157-RP, 2016 WL 4212295 (W.D. Tex. Aug. 9, 2016)........................... 1

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013)................................................................................. 7, 17

*Affinity Labs of Tex., LLC v. DirecTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016).................................................................................. passim

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
   109 F. Supp. 3d 916 (W.D. Tex. 2015)............................................................................. 6

*Affinity Labs of Texas, LLC  v. Amazon.com Inc.*,
   838 F.3d 1266 (Fed. Cir. 2016)....................................................................... 11, 12, 13, 19

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ............................................................................................ passim

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
   239 F.3d 1343 (Fed. Cir. 2001).................................................................................... 10

*Amdocs (Israel) Ltd., v. Openet Telecom, Inc.*,
   --- F.3d ----, No. 2015-1180, 2016 WL 6440387 (Fed. Cir. Nov. 1, 2016)................... 15, 19

*Asghari-Kamrani et al. v. United Servs. Auto Ass'n*,
   No. 2:15-cv-478, 2016 WL 3670804 (E.D. Va. Jul. 5, 2016)............................................ 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................... 9

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016)........................................................................ 14, 15, 19

*Bilski v. Kappos*,
   561 U.S. 593 (2010)......................................................................................... 7, 10, 20

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014)................................................................................. passim

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
   558 F. App'x 988 (Fed. Cir. 2014) ............................................................................... 12

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011)................................................................................. 7, 18

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014)........................................................................ 15, 19, 20

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012)................................................................................. passim

*Electric Power Group, LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)................................................................................. passim

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)............................................................................... 12, 13

*FairWarning IP, LLC v. Iatric Sys. Inc.,*
    --- F.3d ----, No. 2015-1985, 2016 WL 5899185 (Fed. Cir. Oct. 11, 2016) ............. 13, 18, 19

*Grisham v. United States,*
    103 F.3d 24 (5th Cir. 1997) ................................................................................... 6

*In re TLI Commc'ns LLC Patent Litig.,*
    823 F.3d 607 (Fed. Cir. 2016) ................................................................... passim

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
    792 F.3d 1363 (Fed. Cir. 2015) ................................................................. passim

*Intellectual Ventures I LLC v. Symantec Corp.,*
    838 F.3d 1307 (Fed. Cir. 2016) ................................................................. passim

*Internet Patents Corp. v. Active Network, Inc.,*
    790 F.3d 1343 (Fed. Cir. 2015) ................................................................. passim

*McRO, Inc. v. Bandai Namco Games Am. Inc.,*
    837 F.3d 1299 (Fed. Cir. 2016) ................................................................. 12, 13

*OpenTV, Inc. v. Apple, Inc.,*
    Case No. 14-cv-01622-HG, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) ........................... 18

*Synopsys, Inc. v. Mentor Graphics Corp.,*
    --- F.3d ----, 2016 WL 6068920 (Fed. Cir. Oct. 17, 2106) .................................. 16

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014) ................................................................... passim

## STATUTES

35 U.S.C. § 101 ..................................................................................................... passim

## RULES

Fed. R. Civ. P. 8(a)(2) ................................................................................................ 9

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 6

## I.  INTRODUCTION

Plaintiff Meetrix IP, LLP's complaints for patent infringement should be dismissed because the three asserted patents—U.S. Patent Nos. 9,094,525 ("'525 patent"), 9,253,332 ("'332 patent"), and 8,339,997 ("'997 patent") (collectively "the patents-in-suit," attached as Exs. 1-3 to the McPherson Decl.)—are patent-ineligible under 35 U.S.C. § 101.  The claims fail to meet § 101's threshold eligibility requirement because (1) they are directed to the abstract ideas of mixing audio from different types of sources (in the '525 and '332 patents) and authenticating one's identity prior to joining a meeting (in the '997 patent), which were long performed with or without computers, and (2) they merely recite these abstract ideas as desired outcomes without stating how to implement them, other than using generic functionality performed with conventional computer components.

The Supreme Court has emphasized that abstract ideas, including longstanding human activities and computer-implemented data manipulation, are ineligible for patent protection under § 101.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).  That principle cannot be circumvented by limiting an idea to a technological environment or implementing it using generic computer functionality.  *Id*. at 2359-60.  In recent years, the Supreme Court, the Federal Circuit, and this Court have routinely invalidated computer-implemented patent claims under § 101.  *See*, *e.g*., *id.*; *Affinity Labs of Tex., LLC v. DirecTV, LLC*, 838 F.3d 1253, 1255-56, 1265 (Fed. Cir. 2016) ("*Affinity Labs-DirecTV*"); *A Pty Ltd., v. Google, Inc.,* 149 F. Supp. 3d 754, 760-761 (W.D. Tex. 2016), *adhered to*, 2016 WL 4212295 (W.D. Tex. Aug. 9, 2016).

The patent claims here suffer from the same basic defect as the claims in those cases because they claim nothing more than abstract ideas using conventional computer components as mere tools to perform basic functions  Therefore, the claims are invalid under § 101 and

Meetrix's complaints should be dismissed in full.

## II.   BACKGROUND

On September 2, 2016, Meetrix filed separate actions against Citrix Systems, Inc., and LogMeIn, Inc., alleging that each infringes "at least claim 1 of the '332 Patent and '525 Patent" and "at least claim 11 of the '997 Patent."   Citrix Complaint [#1] at ¶¶ 16-17, LogMeIn Complaint [#1] at ¶¶ 16-17.[1]   The three patents are members of the same patent family and generally relate to audio conferencing over standard telephone networks (called "public switch telephone networks," or "PSTN") along with audio-video conferencing over Internet networks (called "Internet protocol," or "IP," networks).

The patents acknowledge that both PSTN and IP systems were well-known.   *See, e.g.*, Ex. 1, '525 patent, at 1:20-28.[2]   Their shared specification states that it would be "desirable" to have a "hybrid" system that allows conference calls including both PSTN- and IP-based participants, *i.e.*, a system that mixes audio from PSTN- and IP-based participants in a single audio-video conference.   *Id.* at 1:50-1:53.   The patents further describe a hybrid prior art system. *Id.* at 1:54-2:10.   The '525 and '332 patents discuss and claim mixing audio from PSTN- and IP-based participants on an audio-video conference call, *id.* at 3:22-4:7, 10:2-17; Ex. 2, '323 patent, at 3:20-58, 9:52-10:5, but neither explains how the claimed mixing differs from the prior art. The '997 patent claims the additional feature of authenticating a telephone participant on a secure audio-video conference call.   Ex. 3, '997 patent, at 12:44-64.

---

[1] Meetrix IP also filed a separate action against Polycom, Inc. (No. 1:16-cv-01035-RP) alleging that Polycom infringes those same claims.   Polycom Complaint [#1] at ¶¶ 16-17.   This motion presents a common issue that would resolve all cases.

[2] The Background of the Invention and the Detailed Description of the Preferred Embodiment sections of each patent are the same except for apparent minor typographical corrections.   For simplicity, when citing these sections only the '525 patent is cited.   Each patent, however, has a different Summary of the Invention section.

The patents demonstrate that the "invention" requires nothing more than conventional components (*e.g.*, "a PC or other computer," "a keyboard and mouse," "a standard desktop telephone," "a video input device or camera," an "audio input device" such as a "microphone," "a wireless cell phone" and/or a "standard telephone handset") and standard processes (*e.g.*, "standard audio mixing" and well-known encryption and data transmission techniques). Ex. 1 at 5:4-23, 8:32-35, 8:59-60, 9:48-52, Fig. 3. Meetrix's infringement allegations likewise show that Meetrix views the claims as requiring only conventional components. *See, e.g.*, Citrix Complaint [#1] at ¶ 17 (asserting that a "group of multicast appliances" can simply be "remote computers" and a "virtual private network" can simply be any "private secure connection").

### A.    The '525 And '332 Patents

The '525 patent is entitled "Audio-Video Multi-Participant Conference Systems Using PSTN and Internet Networks." Ex. 1. It describes "[a] system for supporting a multi-participant conference call" including "a first mixer, a first transport output, a second mixer, and a second transport output," which are used to mix content and send it to different participants on the call, including an IP-based participant connected over the Internet and a PSTN-based participant connected over the telephone. *Id*. at 3:44-59. The claimed system is illustrated below.



Claim 1 of the '525 patent, which is the only specifically asserted claim, recites:

> 1. A system for supporting a multi-participant conference call comprising:
>
> a first mixer that mixes a Public Switched Telephone Network (PSTN) client audio data stream with a moderator audio-video data stream into a first mixed data stream;
>
> a first transport output that transmits the first mixed data stream to at least one remote client that receives the first mixed data stream, the at least one remote client communicatively coupled to the Internet, which generates a remote client audio-video data stream;
>
> a second mixer that mixes the moderator audio-video data stream with the remote client audio-video data stream into a second mixed data stream;
>
> and a second transport output that transmits a mixed audio data stream, corresponding to the second mixed data stream, to the PSTN client.

The '332 patent, entitled "Voice Conference Call Using PSTN and Internet Networks," similarly describes mixing and sending audio data to PSTN- and IP-based participants on an audio-video conference call. Ex. 2 at 3:22-33. Asserted claim 1 also specifies use of a virtual private network (VPN) for secure Internet communications, *see id.* at 8:15-18, which is illustrated below.



Claim 1 of the '332 patent provides:

> 1. A method for supporting a multi-participant audio/video conference call, the method comprising:
>
> receiving first audio data from a Public Switched Telephone Network (PSTN)

client;

receiving second audio data from a moderator;

receiving third audio data, video data, and collaboration data from at least one remote client through a first Virtual Private Network (VPN) tunnel;

mixing the first audio data from the PSTN client with the second audio data from the moderator into a first mixed audio data;

transmitting the first mixed audio data to the remote client through the first VPN tunnel;

mixing the second audio data from the moderator with the third audio data from the remote client into a second mixed audio data; and

transmitting the second mixed audio data to the PSTN client.

**B.    The '997 Patent**

The '997 patent is entitled "Media Based Collaboration Using Mixed-Mode PSTN and Internet Networks.  Ex. 3.  The one specifically asserted claim of the '997 patent, claim 11, describes the process for authenticating a telephone participant who wants to join a multi-participant conference call, *id.* at 12:44-51, as illustrated below.



Claim 11 of the '997 patent claims this authentication:

11. A system for adding a telephone participant to a multi-participant audio-video conference, the system comprising:

a first message communicated to each of a plurality of multicast appliances over the Internet, wherein the first message comprises a group address which identifies the participants;

each of the multicast appliances receiving the first message;

      plurality of virtual private networks established across the Internet routes between the multicast appliances;

      one or more of the participants communicating in the multi-participant video conferences;

      the telephone participant configured to join the multi-participant video conference, wherein the telephone participant provides a conference ID information and the telephone participant is authenticated; and

      the telephone participant configured to participate in the multi-participant video conference, wherein the telephone participant speaks in the video conference and digital voice data being generated in response to the telephone participant speaking.

## III.   LEGAL STANDARD

### A.   Motion To Dismiss

A motion to dismiss under Rule 12(b)(6) should be granted if the complaint lacks a cognizable legal theory. *Grisham v. United States,* 103 F.3d 24, 25-26 (5th Cir. 1997). Patent-eligibility under § 101 is a threshold issue of law that is routinely resolved on a motion to dismiss, before formal claim construction or fact development. *See*, *e.g.*, *Affinity Labs-DirecTV*, 838 F.3d at 1265, *affirming* 109 F. Supp. 3d 916, 921-22 (W.D. Tex. 2015); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,* 776 F.3d 1343, 1349 (Fed. Cir. 2014). Resolving patent eligibility on the pleadings "conserv[es] scarce judicial resources, provid[es] a bulwark against vexatious infringement suits, and weed[s] out ... patents that stifle innovation and transgress the public domain." *Affinity Labs-DirecTV*, 109 F. Supp. 3d at 921 (citation and quotation marks omitted).

### B.   Patent Eligibility Under 35 U.S.C. § 101

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of

this title." 35 U.S.C. § 101.  Section 101 "contains an important implicit exception" for abstract ideas, *Alice*, 134 S. Ct. at 2354, which are not patent eligible as a matter of law because they are basic tools in the "storehouse of knowledge" that are "free to all … and reserved exclusively to none," *Bilski v. Kappos*, 561 U.S. 593, 602 (2010).  "'[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it,' thereby thwarting the primary object of the patent laws."  *Alice*, 134 S. Ct. at 2354.  The Supreme Court's two-part framework from *Alice* governs § 101's threshold patent-eligibility standard.  *Id*. at 2355, 2360.  This two-part test applies regardless of whether a claim is couched as a computer method, apparatus, or medium.  *Id*. at 2360.

First, the Court determines whether the asserted claims are drawn to an abstract idea.  *Id*. An abstract idea "does not become nonabstract by limiting [it] to a … technological environment," such as a computer system.  *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015) ("*IV-Capital One*").  The Court must determine whether, notwithstanding the claims' computer "verbiage" and implementation, the "core" or "heart" of the claims—the "most important aspect"—amounts to an abstract idea.  *Affinity Labs-DirecTV,* 838 F.3d at 1256; *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *Accenture Global Servs., GmbH v. Guidewire Software, Inc*., 728 F.3d 1336, 1344 (Fed. Cir. 2013); *Internet Patents Corp*., 790 F.3d at 1348; *see also CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366, 1374 (Fed. Cir. 2011) (courts must "look to the underlying invention").

Second, the Court determines whether the claims add "significantly more" to the abstract idea—something "inventive"—that is "sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Alice*, 134 S. Ct. at 2357 (citation omitted).  The prohibition on

patenting abstract ideas cannot be circumvented by adding "well-understood," "routine," or "conventional" activities, limiting the idea to a technological environment or field of use, or including other inconsequential features.  *Id*. at 2359.  Patentees cannot claim implementing the idea using generic computer or networking components without specifying "how [they are] specially programmed to perform the steps claimed," *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012), and "how the result is accomplished," *Internet Patents Corp. v. Active Network, Inc.,* 790 F.3d 1343, 1344, 1348 (Fed. Cir. 2015).  *See also, e.g.*, *Electric Power*, 830 F.3d at 1355-56 (claims reciting "result-focused, functional" terms without "any assertedly inventive programming" or "particular ways of achieving" the goals are ineligible).

Applying this framework in *Alice*, the Supreme Court held patent-ineligible numerous computer method, system, and media claims that were directed to a fundamental concept (intermediated settlement) implemented using "purely functional and generic" computer components (such as a "data processing system" and a "data storage unit").  134 S. Ct. at 2359-60.  Likewise, the Federal Circuit has consistently held computer claims describing Internet- or telephone-based systems for providing audio, graphics, or other content to be ineligible for patent protection.  *See*, *e.g.*, *Affinity Labs-DirecTV*, 838 F.3d at 1255-56, 1260 (claims directed to "out-of-region access to regional broadcast content" on telephones held ineligible); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 609-10 (Fed. Cir. 2016) ("claims no more than the abstract idea of classifying and storing digital images (from telephones) in an organized manner" held ineligible); *IV-Capital One*, 792 F.3d at 1366, 1369-70 (claims directed to the abstract idea of budgeting implemented with standard computer held ineligible); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716-17 (Fed. Cir. 2014) (claims directed to "advertisement as an exchange or currency" implemented on the Internet held ineligible).  This Court has done the same.  *See, e.g.,*

*A Pty Ltd.,* 149 F. Supp. 3d at 760-761 (claims directed to abstract idea of an "address directory" held ineligible).

## IV.    ARGUMENT

The claims of the patents here are patent-ineligible because they:  (1) are directed to abstract ideas for mixing audio data from different sources on an audio-video conference (in the '525 and '332 patents) and authenticating a telephone user's identity prior to joining an audio-video conference (in the '997 patent); and (2) involve only conventional computer components and processes that, individually or in combination, do not make the claims patent-eligible.

This motion focuses on the three claims Meetrix identified in its complaint.  Meetrix's complaint cannot be read to allege infringement of other claims, since Meetrix was required to provide a "statement of the claims showing the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plausible basis for relief required). Regardless, the analysis below is dispositive as to all claims because the three claims are representative.  *See, e.g., Alice*, 134 S. Ct. at 2359-60 (invalidating 208 claims across four patents based on two representative claims); *Content Extraction*, 776 F.3d at 1344 (invalidating 242 claims based on two representative claims).

### A.    The '525 And '332 Patent Claims Are Ineligible Under § 101

#### 1.    The '525 And '332 Patent Claims Are Directed To An Abstract Idea

The '525 and '332 patent claims are directed to the abstract idea of mixing audio data received from different types of sources in the context of audio and visual communication. Claim 1 of the '525 patent and claim 1 of the '332 patent claim this idea in a series of basic steps, including (1) receiving "audio data" from different participants (PSTN-based, IP-based, and the "moderator"); (2) mixing the audio data from the PSTN-based participant and the moderator, and transmitting it to the IP-based participant; and (3) mixing the audio data from the IP-based

participant and the moderator, and transmitting it to the PSTN-based participant.  *See* Ex. 1, '525 patent, at 10:2-17; Ex. 2, '332 patent, at 9:52-10:5; *see also, e.g.*,

*ty Labs-DirecTV*, 838 F.3d at 1256 (summarizing steps by "[s]tripp[ing] … excess verbiage"); *Dealertrack*, 674 F.3d at 1333 (summarizing claims in "simplest form").  The other claims do likewise.  *See* Ex. 1, '525 patent, cl. 2-20; Ex. 2, '332 patent, cl. 2-12.

The core of the claims—the essential, most important aspect—is the abstract idea of mixing audio data from different types of sources.  *See Electric Power*, 830 F.3d at 1354; *Internet Patents Corp.*, 790 F.3d at 1348.  As the patents explain, the purported invention is about a "mix of audio and video data over PSTN and IP-based audio/video conferencing" to allow participation by "all conference participants" in a conference.  Ex. 1 at 1:50-53.  In addition, Meetrix's allegations focus on the accused products' "mixing the different audio signals."  *See* Citrix Complaint [#1] at ¶ 16.[3]

The concept of mixing audio from different types of sources is an abstract idea that "humans have always performed," *Content Extraction*, 776 F.3d at 1347—a basic tool in the "storehouse of knowledge" that is "free to all … and reserved exclusively to none."  *Bilski,* 561 U.S. at 602.  For example, mixing audio data has long been performed in the movie industry, such as when dialog recited by the actors is combined with background music for a particular scene or when different actors record dialog separately, as in animated films.  In the recording industry, mixing audio also has long been common practice.  A commercially distributed song is often the product of mixing multiple different tracks (*i.e.*, the lead singer, back-up singers and different instrumental music), each recorded separately.  Furthermore, the '525 and '332 patents

---

[3] "[T]he claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses."  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1351 (Fed. Cir. 2001).

admit that even mixing audio data streams from PSTN-based and IP-based users was well-known using an existing telecommunications standard for prior art conferencing systems.  Ex. 1 at 1:54-2:10, Fig. 1.  That the patents claim this mixing idea in a particular technological context (IP and PSTN networks) using conventional components described in functional terms as mere tools to perform the basic computer functions (*i.e.*, "mixer[s]" that "mix[]" data, "transport output[s]" that "transmit" data, and a "virtual private network" for secure data transmission, Ex. 1, cl. 1; Ex. 2, cl. 1) does not make it "any less abstract."  *IV-Capital One*, 792 F.3d at 1367; *Electric Power*, 830 F.3d at 1354; *see also Alice*, 134 S. Ct. at 2359-60; *TLI*, 823 F.3d at 614.

The '525 and '332 patent claims are indistinguishable from claims for presenting audio or video media content over computer or telephone networks that the Federal Circuit and this Court have found were directed to abstract ideas.  For example, in *Affinity Labs-DirecTV*, the Federal Circuit (affirming this district's decision), held that claims reciting a system using cellular network and computer components allowing users to select and "receive a streaming media signal" corresponding to a regional broadcasting channel were directed to the abstract idea of "providing out-of-region access to regional broadcast content."  838 F.3d at 1258; *see also Affinity Labs of Texas, LLC  v. Amazon.com Inc.,* 838 F.3d 1266, 1269-1270 (Fed. Cir. 2016) ("*Affinity Labs-Amazon*") (similar).  Likewise, notwithstanding their technological contexts, the claims in *TLI* were directed to the abstract idea of collecting, categorizing, and storing photo data, 823 F.3d at 612-613, and the claims in *Ultramercial* were directed to the abstract idea of providing free online media content in exchange for watching an advertisement, 772 F.3d at 715. In addition, the claims here are just as abstract as the ineligible claims for collecting, analyzing, and presenting power grid diagnostic data in *Electric Power,* 830 F.3d at 1353, appending data to an electronic message before transmitting it in *Intellectual Ventures I LLC v. Symantec Corp.,*

838 F.3d 1307, 1316-17 (Fed. Cir. 2016) ("*IV-Symantec*"), and receiving, recombining, and transmitting telephone transaction data in *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.,* 558 F. App'x 988, 992 (Fed. Cir. 2014).

Moreover, like other computer-implemented claims found patent-ineligible, the independent claims of the '525 and '332 patents are ineligible because they "do[] not specify how the computer hardware and [software] are specially programmed to perform the steps claimed." *Dealertrack*, 674 F.3d at 1333 (citation omitted).  Instead, they contain broad functional language and only recite a desired goal of mixing and sending audio data from different types of sources, without specifying any particular way to accomplish this objective. *See* Ex. 1, '525 patent, cl. 1 cl. 1 ("a first mixer," "a first transport output," "a second mixer," and "a second transport output"); Ex. 2, '332 patent, cl. 1 ("receiving," "mixing," and "transmitting").  Such "vague, functional," terms, "devoid of technical explanation as to how to implement the invention," cannot confer eligibility. *TLI*, 823 F.3d at 615; *see also*, *e.g.*, *Electric Power,* 830 F.3d at 1356*; Affinity Labs-DirectTV*, 838 F.3d at 1265; *Affinity Labs-Amazon*, 838 F.3d at 1269-70.  Indeed, the ubiquitous use of telephones and computers as for conferencing, *see Ultramercial,* 772 F.3d at 716 (recognizing "ubiquitous" reach of Internet as information-transmitting medium), coupled with the broad scope that Meetrix assigns to its patent claims, *see e.g.,* Citrix Complaint [#1] at ¶¶ 16-17, confirm the ineligibility of the claims. *IV-Symantec*, 838 F.3d at 1321 ("preemption may signal patent ineligible subject matter") (citation omitted); *IV-Capital One*, 792 F.3d at 1369 (breadth confirms invalidity).

Meetrix will likely rely on two recent Federal Circuit cases finding claims patent-eligible at *Alice* step one.  *See Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327 (Fed. Cir. 2016); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016).  But in those cases,

unlike here, the claims recited "specific ... improvement[s] in computer capabilities." *Enfish*, 822 F.3d at 1336; *McRO*, 837 F.3d at ---, 2016 WL 4896481 at *8.[4]  Here the '525 and '332 patents "fail[] to provide any technical details for the tangible components" and "instead predominantly describe[] the system and methods in purely functional terms" using nothing more than conventional computer components. *TLI*, 823 F.3d at 612 (distinguishing *Enfish*); *see also FairWarning IP, LLC v. Iatric Sys. Inc.,* --- F.3d ----, No. 2015-1985, 2016 WL 5899185, at *3-4 (Fed. Cir. Oct. 11, 2016) (distinguishing *McRO* and *Enfish*); *IV-Symantec*, 838 F.3d at 1313-14, 1315, 1321, n.5  (same); *Affinity Labs-DirecTV*, 838 F.3d at 1262 (same); *A Pty*, 149 F. Supp. 3d at 758.  As discussed, here the claimed steps and components "do no more than describe a desired function or outcome, without providing any limiting detail" to "confine[] the claim to a particular solution." *Affinity Labs-Amazon*, 838 F.3d at 1269.  That is, the claims do not recite "an improvement in computers as tools," but instead "use computers as tools" to perform the abstract idea of mixing data from different types of sources. *Electric Power*, 830 F.3d at 1354.

### 2. The '525 And '332 Patent Claims Add Nothing Inventive

At *Alice* step two, the '525 and '332 patent claims add nothing inventive to the abstract idea of mixing audio from different types of sources. *See* 134 S. Ct. at 2359-60.  Claim 1 of the '525 patent only adds generic computer components that, as discussed, are recited in purely functional terms: two "mixer[s]" that mix audio data and two "transport output[s]" that output (*i.e.*, transmit) data.  Similarly, claim 1 of the '332 patent merely recites performing the abstract idea using conventional computer functions:  "receiving," "mixing," and "transmitting" data.  Those are equivalent to the "purely functional and generic" components and "basic functions of a

---

[4] In *Enfish* the claims were "**specifically directed** to a self-referential table for a computer database."  822 F.3d at 1336 (emphasis added).  Similarly, in *McRO. Inc.*, the claims were directed to "a **specific asserted improvement** in computer animation, i.e., the automatic use of rules of a particular type."  837 F.3d at ---, 2016 WL 4896481, at *8 (emphasis added).

computer" that merely linked the abstract idea to a "particular technological environment" and did not make the claims eligible in *Alice*, 134 S. Ct. at 2359-60 (citation omitted).  In *Alice*, the Supreme Court held that claims reciting a "data processing system" with a "communications controller" for obtaining, modifying, and transmitting data were non-inventive.  *Id*.  The Federal Circuit also has held similar basic computer functions and components to be insufficient to confer eligibility.  *See, e.g., IV-Capital One,* 792 F.3d at 1367-71 (using an "interactive interface" and "break[ing down] and organiz[ing]…data according to some criteria" and monitoring data is non-inventive); *TLI*, 823 F.3d at 614 (sending data over network is "'not even arguably inventive'" (citation omitted)); *Dealertrack*, 674 F.3d at 1333 ("selectively forwarding" information and forwarding reply data is non-inventive).

Even when these basic functions and components are viewed "as an ordered combination," they do not reveal a "non-conventional and non-generic arrangement of known, conventional pieces" that might provide an inventive concept.  *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC,* 827 F.3d 1341, 1350 (Fed. Cir. 2016).  The claims' arrangement of computer components and processes merely tracks the necessary steps (mixing audio from multiple sources to facilitate a conference call among multiple participants) for performing the abstract idea in a particular technological context, which "cannot confer patent eligibility." *TLI*, 823 F.3d at 615.

The independent claims' other features likewise add nothing inventive.  Reciting particular types of data (audio, video, and collaboration data) and particular sources of data (PSTN- or IP-based) does not make the claims eligible, just as it added nothing inventive to recite particular media content ("text data, music data, [or] video data") in *Ultramercial*, 772 F.3d at 712, particular "sources" and "types" of data in *Electric Power*, 830 F.3d at 1355, or a

particular type of information to be selectively forwarded in *Dealertrack,* 674 F.3d at 1333. Likewise, reciting a particular type of network ("a virtual private network") is a classic field of use limitation that is "'not even arguably inventive.'" *TLI*, 823 F.3d at 614 (citation omitted). The use of virtual private networks to provide secure and encrypted communication was well-known at the time of the purported invention, as the patents acknowledge.[5]  Meetrix concedes as much in its infringement allegations, broadly equating "virtual private network[s]" with any "private secure data network connection."  Citrix Complaint [#1] at ¶ 16.

Reciting such "off-the-shelf, conventional computer, network … technology for gathering, sending, and presenting the desired information" is insufficient to confer eligibility. *Electric Power*, 830 F.3d at 1355; *see also IV-Symantec*, 383 F.3d at 1319 (conventional virus scanning technology is insufficient); *Content Extraction,* 776 F.3d at 1348 (conventional optical character recognition technology and scanners is insufficient).  Nor does it matter that some independent claims are couched as system (*e.g.*, Ex. 1, '525 patent, cl. 1) or computer media claims (*e.g.*, *id.* cl. 9), rather than method claims (*e.g.*, Ex. 2, '332 patent, cl. 1).  They are "no different … in substance" and all fail for the same reasons.  *Alice*, 134 S. Ct. at 2360.

Far from the handful of particular enhancements to computer technology that the Federal Circuit has found eligible at *Alice* step two, *see Amdocs (Israel) Ltd., v. Openet Telecom, Inc.,* ---F.3d ----, No. 2015-1180, 2016 WL 6440387, at *12-13 (Fed. Cir. Nov. 1, 2016); *Bascom*, 827 at 1350; *DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1256 (Fed. Cir. 2014), the claims here merely apply an "old solution" (mixing audio data from different types of sources) in a

---

[5] *See* Ex. 1, '525 patent, at References Cited (citing, *e.g.*, "*Multicast VPN-IP Multicast Support for MPLS VPNs*," Cisco Systems, Inc., 2002; Costa et al., "*An Introduction to Virtual Private Networks: Towards D-VPNs,*" Network and Information Systems Journal, 2000); *id.* at 8:32-35 ("For security purpose all connections that traverse across the open Internet … are preferably secured by the use of encryption running with a virtual private network.").

computer environment with no discussion of how it is accomplished.  *Synopsys, Inc. v. Mentor Graphics Corp.*, --- F.3d ----, 2016 WL 6068920 at *10-11 (Fed. Cir. Oct. 17, 2106) (distinguishing *DDR* and *Bascom*); *IV-Symantec*, 838 F.3d 1321 (same); *Affinity Labs-DirecTV*, 838 F.3d at 1261-62, 1265 (same).  Thus, claim 1 of the '525 patent and claim 1 of the '332 patent add only insignificant limitations that do not make the claims patent eligible.

The remaining claims of both patents also add nothing inventive.  The other independent claims (computer medium claim 9 and system claim 17 of the '525 patent and system claim 8 of the '332 patent) recite the same functionality, except they further provide for compressing the audio data (Ex. 1, '525 patent, cl. 9) or voice over IP (*id.*, cl. 17; Ex. 2, '332 patent, cl. 8), both of which the specification admits were known in the prior art.  *See* Ex. 1 at 1:54-57, 2:58-63, Figs. 1-2.  Those features do not render the claims patent-eligible.  *See, e.g.*, *Electric Power*, 830 F.3d at 1355; *TLI*, 823 F.3d at 615 (claims "using known image compression techniques" are non-inventive).  Nor do the dependent claims add anything inventive.  The '525 and '332 patents' dependent claims specify additional mixers (Ex. 1, cl. 2, 10, 18; Ex. 2, cl. 2, 9); voice over IP components and functionality (Ex. 1, cl. 3, 6, 8, 11, 12, 15; Ex. 2, cl. 3, 4, 7, 10); generic compression/decompression functions (Ex. 1, cl. 4; Ex. 2, cl. 6, 11, 12); virtual private networks and related functionality (Ex. 1, cl. 5, 7, 13, 14, 19, 20; Ex. 2, cl. 5); and transmitting the mixed audio data to a phone user (Ex. 1, 16).  None of these details adds something inventive to save the claims.  *See*, *e.g.*, *Affinity Labs-DirecTV*, 838 F.3d at 1261-62; *TLI*, 823 F.3d at 615; *Content Extraction*, 776 F.3d at 1348-49.

### B.   The '997 Patent Claims Are Ineligible Under § 101

#### 1.   The '997 Patent Claims Are Directed To An Abstract Idea

The '997 patent is directed to the abstract idea of authenticating one's identity prior to joining a meeting.  Claim 11 recites a system for adding a telephone participant to a secure

audio-video conference across the Internet by providing conference ID information and authenticating the participant prior to his or her participating in the conference.  Ex. 3, '997 patent, at 12:56-59; *see also id.* at 11:12-16; 11:57-59.  The "heart"—the "most important aspect" of—claim 11 is the abstract idea of authenticating before allowing the user to participate in an audio-video conference.  *Ultramercial*, 772 F.3d at 714 ("heart" of computer claims was abstract idea); *Accenture,* 728 F.3d at 1344 (same); *Internet Patents Corp.,* 790 F.3d at 1348 ("essential, 'most important aspect'" of computer claims was abstract idea).  Authentication is the threshold step that permits a telephone user to join the conference.  *See* Ex. 3 at Abstract ("A method which allows standard telephone users to audio conference with video conferencing participants over IP networks in a private secure environment."); *id.* at 12:44-45 (The claim 11 preamble: "A system for adding a telephone participant to a multi-participant audio-video conference").  Meetrix's infringement contentions confirm that authentication is the key concept:

> The system is able to facilitate a telephonic participant who dials-in, provides a conference ID and is then authenticated. ***Once authenticated, the telephonic participant is able to communicate*** with the other online participants who are connected over a data network. In this regard, GoToMeeting infringes at least claim 11 of the '997 patent.

Citrix Complaint [#1] at ¶ 17 (emphasis added).

Authentication is a longstanding human activity.  People are often required to authenticate their identity prior to participation in numerous contexts—for example, when customers call their credit card company to ask about their accounts or whenever a user logs onto a computer.  And this basic human activity precedes the computer age.  During prohibition, speakeasies often required patrons to provide a secret password to authenticate anyone seeking entry.  A modern example that would be familiar to most people is being required to show your driver's license or passport to confirm your identity at airport security.  Thus, authentication is an abstract idea that "humans have always performed."  *Content Extraction*, 776 F.3d at 1347.  The

- 17 -

authentication concept at issue here is just like other screening and authentication ideas found abstract: screening to prevent "improper access" to health records (*FairWarning*, 2016 WL 5899185, at *3-4), screening for fraud in online credit card transactions (*CyberSource*, 654 F.3d at 1374), and screening transactions for sufficient resources (*Alice*, 134 S. Ct. at 2357).[6]

In addition, as previously explained, merely implementing that idea in a particular technological environment with conventional computer features, such as "multicast appliances" (which Meetrix alleges are just "remote computers," Citrix Complaint [#1] at ¶ 17 ("group of multicast appliances (e.g. remote computers)")) and a standard "virtual private network," does not make the '997 patent claims "any less abstract." *IV-Capital One*, 792 F.3d at 1367; *see supra* at IV.A.1.

Furthermore, claim 11 fails to "specify how the computer hardware and [software] are specially programmed to perform the steps claimed." *Dealertrack*, 674 F.3d at 1333 (citation omitted). It claims no specific improvement in computer technology or "technical explanation as to how to implement the invention." *Electric Power,* 830 F.3d at 1356. Instead, the claim is drafted in functional language and only expresses a desired result: authenticating a telephone user prior to that user participating in the conference. *See* Ex. 3, '997 patent cl. 11 ("a first message," "one or more participants communicating," "a telephone participant configured to join the … video conference," "the telephone participant configured to participate, wherein the phone participant speaks," and "digital voice data being generated."). Describing an "invention" solely

---

[6] *See also*, *e.g.*, *Asghari-Kamrani et al. v. United Servs. Auto Ass'n,* No. 2:15-cv-478, 2016 WL 3670804 (E.D. Va. Jul. 5, 2016) (ineligible claims directed to the abstract idea of "using a third party and a random, time-sensitive code to confirm the identity of a participant to a transaction"); *OpenTV, Inc. v. Apple, Inc.,* Case No. 14-cv-01622-HG, 2015 WL 1535328, at *5 (N.D. Cal. Apr. 6, 2015) (ineligible claims "drawn to the abstract idea of using identification codes to solve [the] age-old problem" of "transmitting confidential information using unsecured communications methods").

in terms of a desired outcome without specifying how to implement the invention is the hallmark of claims that fail under § 101, as discussed. *See*, *e.g.*, *FairWarning IP*, 2016 WL 5899185 at *4; *IV-Symantec*, 838 F.3d at 1316; *Electric Power*, 830 F.3d at 1356*; Affinity Labs-DirectTV*, 838 F.3d at 1265; *Affinity Labs-Amazon*, 838 F.3d at 1269-70; *supra* at IV.A.1.  The generic, functional nature of the claim elements also distinguishes claim 11 from the claims found eligible at *Alice* step one in *Enfish* and *McRO*.  *Supra* at IV.A.1.

### 2.   The '997 Patent Claims Add Nothing Inventive

Claim 11 adds nothing inventive to the abstract idea of authenticating one's identity prior to joining a meeting.  *See Alice,* 134 S. Ct. at 2359-60.  As in the '525 and '332 patent claims, the computer features recited in claim 11 of the '997 patent—"a plurality of multicast appliances," "virtual private networks," a "video conference," the "Internet"—are generic computer components like the ones the courts have repeatedly found insufficient under § 101. *See Alice,* 134 S. Ct. at 2357, 2360; *supra* at IV.A.2.  Even Meetrix characterizes "multicast appliances" as simply "remote computers" and describes a "virtual private network" as merely a "private secure connection."   Citrix Complaint [#1] at ¶ 17.   Claim 11 thus adds only insignificant limitations that do not make the claims patent eligible.

Moreover, as discussed, a particular type of network (virtual private networks) is at most a field of use limitation that is "'not even arguably inventive.'" *TLI*, 823 F.3d at 614 (citation omitted); *see supra* at IV.A.2.   Alone or in combination, the steps merely describe the authentication idea in a particular technological environment, which "cannot confer patent eligibility."  *TLI*, 823 F.3d at 615; *cf. Amdocs*, 2016 WL 6440387, at *12-13; *Bascom,* 827 F.3d at 1350; *DDR Holdings,* 773 F.3d at 1256.

The other claims likewise add nothing inventive.  The other independent claims (claims 1 and 3) recite the same steps, but couched as methods instead of a system.  Claim 1 also recites a

gateway server, but that is a nothing more than an "off-the-shelf, conventional computer, network" component for "gathering, sending, and presenting the desired information," which is insufficient to confer patent eligibility. *Electric Power*, 830 F.3d at 1355. The '997 patent's dependent claims add nominal details such as the configuration and/or transmission of IP traffic over a network (claims 2, 7, 8, 9, 10, 15, 16, 17, and 18) or the details of the gateway server (claim 2, 4, 5, 6, 7, 12, 13, 14, and 15)—none of which are sufficient to render claims patent eligible. *See, e.g.*, *Content Extraction*, 776 F.3d at 1348-49; *supra* at IV.A.2.

### C.   The Machine-or-Transformation Test Confirms The Claims Ineligibility

The machine-or-transformation test which, although not the sole test, has been called "an important and useful clue" confirms that the asserted claims are ineligible. *Bilski*, 561 U.S. at 603. The claims' recitation of generic computer components (programmed in some unspecified way), standard communications technology, and other conventional hardware do not qualify as a "particular machine under the machine prong." *Ultramercial,* 772 F.3d at 716-17. Nor do the claims' mixing of audio data and authentication of a participant transform any article into a different state or thing under the "transformation prong" of the test. "Any transformation from the use of computers or the transfer of content between computers is merely what computers do." *Id.* at 717. Regardless, "satisfying the machine-or-transformation test, by itself, is not sufficient to render a claim patent-eligible" because "not all transformations or machine implementations infuse an otherwise ineligible claim with an 'inventive concept.'" *DDR Holdings*, 773 F.3d at 1256. As discussed, under the two-step *Alice* analysis the asserted claims are ineligible under § 101 because they are directed to abstract ideas and add nothing inventive.

## V.   CONCLUSION

The Court should dismiss Meetrix's complaints in their entirety because the claims of the '525, '332, and '997 patents are invalid under § 101 for lack of patent-eligible subject matter.

DATED:  November 14, 2016                  Respectfully submitted,

By: _/s/_____
       Steve Wingard
       TX State Bar No. 00788694
       swingard@scottdoug.com
       Paige Arnette Amstutz
       TX State Bar No. 00796136
       pamstutz@scottdoug.com

       SCOTT, DOUGLASS & MCCONNICO LLP
       303 Colorado Street, Suite 2400
       Austin, Texas 78701-3234
       Tel.: (512) 494-6300
       Fax: (512) 495-6399

       Charles H. Sanders (*Pro Hac Vice*)
       *charles.sanders@lw.com*
       William J. Trach (*Pro Hac Vice* to be filed)
       *william.trach@@lw.com*
       Nathanial J. McPherson (*Pro Hac Vice*)
       *nathanial.mcpherson@lw.com*
       LATHAM & WATKINS LLP
       John Hancock Tower, 27th Floor
       200 Clarendon Street
       Boston, MA 02116
       Tel.: (617) 948-6000
       Fax: (617) 948-6001

       Gabriel K. Bell (*Pro Hac Vice* to be filed)
       *gabriel.bell@lw.com*
       LATHAM & WATKINS LLP
       555 Eleventh Street, NW
       Suite 1000
       Washington, D.C. 20004-1304
       Tel.: (202) 637-2200
       Fax: (202) 637-2201

       *Attorneys for Citrix Systems, Inc. and LogMeIn, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule 5(b)(2)(E) on November 14, 2016.  As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule 5(b)(2)(E) and by email.


*/s/*_____
Steve Wingard