**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| MEETRIX IP, LLC, | |
| Plaintiff, | Civil Action No. 1:16-cv-1033-LY |
| v. | |
| CITRIX SYSTEMS, INC., GETGO, INC., AND LOGMEIN, INC., | |
| Defendants. | |

**MEETRIX IP, LLC'S REPLY CLAIM CONSTRUCTION BRIEF**

**Table of Contents**

I.  Plaintiff's REPLY arguments ........................................................................ 1

   A.  "Multicast Appliances" ...................................................................... 1

   B.  "Virtual Private Networks"; "Virtual Private Network" ........................................... 2

   C.  "Virtual Private Network Tunnel" or "Virtual Private Network (VPN) tunnel" or "VPN tunnel" ................................................................ 5

   D.  "Conferencing Server"—[AGREED] ..................................................... 6

   E.  "Authenticating" / "Authenticated" ..................................................... 6

   F.  "The System Comprising …Each Of The Multicast Appliances Receiving The First Message … One Or More Of The Participants Communicating …The Telephone Participant Provides … The Telephone Participant Speaks …. " ........... 7

   G.  "Moderator" ........................................................................... 8

   H.  "A Non-Transitory Computer-Readable Medium Including Instructions For A Multi-Participant Conference Process To Be Executed By A Local Moderator Computer" ............................................................................... 9

   I.  "First Mixer"; "Second Mixer"; "Third Mixer" ....................................... 10

   J.  "Audio-Video Data Stream" / "Audio-Video Stream" ........................................ 13

   K.  "Mixed Audio-Video Data" ............................................................ 15

   L.  "First Mixed Data Stream"; "Second Mixed Data Stream"; "Third Mixed Data Stream" ............................................................................... 15

   M.  "First Mixed Audio Data"; "Second Mixed Audio Data"; "Third Mixed Audio Data" .............................................................................. 17

# Table of Authorities

## Cases

*3M Innovative Properties co. v. Avery Dennison Corp.*,
  350 F.3d 1365 (Fed. Cir. 2003) ..................................................................................... 11

*Abbott Laboratories v. Sandoz, Inc.*
  544 F.3d 1341 (Fed.Cir.2008) ...................................................................................... 15

*Acme Highway Products Corp. v. D.S. Brown Co.*,
  473 F.2d 849 (6th Cir.), *cert. denied* 414 U.S. 824 (1973)................................... 16

*Amstar Corp. v. Envirotech Corp.*,
  730 F.2d 1476 (Fed. Cir. 1984) ................................................................................... 16

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
  715 F.3d 891 (Fed. Cir. 2013) ................................................................................. 7, 8

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
  388 F.3d 858 (Fed. Cir. 2004) ...................................................................................... 9

*Chimie v. PPG Industries, Inc.*,
  402 F.3d 1371  (Fed. Cir. 2005) .................................................................................. 14

*Cochrane v. Deener*,
  94 U.S. 780 (1876)....................................................................................................... 16

*Eastern Rotorcraft Corp. v. United States*,
   397 F.2d 978 (Ct. Cl. 1968) ....................................................................................... 16

*Gillette Co. v. Energizer Holdings, Inc.*
  405 F.3d 1367 (Fed. Cir. 2005) ....................................................................... 11, 16, 17

*Innovative Communications Tech., Inc. v. Vivox, Inc.*,
  2012 WL 5331573 (E.D. Va. 2012)...................................................................... 8, 11, 16

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) ...................................................................................... 2

*Merck & Co. v. Teva Pharm. USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005) .................................................................................... 2

*O2 Micro v. Beyond Innovation*,
  521 F.3d 1351 (Fed. Cir. 2008) ................................................................................. 8, 9

*Oatey Co. v. IPS Corp.*,
  514 F.3d 1271 (Fed. Cir. 2008) ................................................................................... 14

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ................................................................................ 1, 12

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
  182 F.3d 1298 (Fed. Cir. 1999) .................................................................................. 10

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
   378 F.3d 1396 (Fed. Cir. 2004) ............................................................................ 2

*Profectus Technology LLC v. Huawei Technologies Co., Ltd.*
   2014 WL 1575719  (E.D.Tex., 2014) ................................................................... 15

*Rowe v. Dror*,
   112 F.3d 473 (Fed. Cir. 1997) ............................................................................ 10

*Stone Basket Innovations LLC v. Cook Med. LLC*,
   No. 2:15-CV-464-JRG-RSP, 2016 WL 1182926 (E.D. Tex. Mar. 28, 2016) ................ 11, 15

*U.S. Surgical Corp. v. Ethicon, Inc.*,
   103 F.3d 1554 (Fed. Cir. 1997) ............................................................................. 9

Pursuant to the Court's Pre-Markman Scheduling Order (Case No. 1:16-cv-1033, Doc. No. 44), Plaintiff Meetrix IP, LLC ("Meetrix" or "Plaintiff") hereby files this Reply Claim Construction Brief, and in support thereof, state as follows:

## I.     PLAINTIFF'S REPLY ARGUMENTS

### A.     "Multicast Appliances"

| Term to be Construed | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "multicast appliances"<br><br>'997 Patent, Claims 1, 3, 5, 11, & 13 | Devices that provide information destined to multiple locations via a single transmission. | Devices that use a group address to send a message |

The principal distinction between the parties' proposed constructions concerns the inclusion of "using a group address" in the construction of "multicast appliance."  Defendants contend that use of a group address must be included.  Defendants' Opening Claim Construction Brief (Dkt. No. 60) at 5 ("Defendants' Brief").  However, the inclusion of "use of a group address" is improper because it is claimed elsewhere in specific and different language, and to inject it into the construction of "multicast appliance" would be contradictory, rendering the other claim language superfluous and confusing.

A review of the claim language—which is of course paramount per *Phillips*—demonstrates that the receipt of a "group address" by a multicast appliance is separately claimed:

> sending a first message to each of a plurality of multicast appliances over the Internet, ***wherein the first message comprises a group address which identifies a plurality of participants***;

> each of the multicast appliances receiving the first message;

'997 patent, claim 1 (emphasis added).

1

"[I]nterpretations that render some portion of the claim language superfluous are disfavored." *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004); *see also Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." (citations omitted)).

Importantly, the "group address" limitation in claim 1 is used differently than Defendants would require by paraphrasing it in their proposed construction of "multicast appliance." Claim 1 merely says that the multicast appliances "receiv[e] the first message." *See* '997 patent, claim 1. There is nothing in the claim language about each multicast appliance using a group address to send a message. *See also* claims 3 and 11. On the other hand, dependent claims 5 and 13 separately claim ***transmitting*** group information by the telephone participant. *See* '997 patent, claims 5 and 13 ("transmitting multicast group information to the gateway server").

> As this court has frequently stated, the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim. *See Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001); *Comark*, 156 F.3d at 1187…. ***In such a setting, where the limitation that is sought to be "read into" an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest***. *See Sunrace Roots Enter. Co. v. SRAM Corp*., 336 F.3d 1298, 1302–03 (Fed. Cir. 2003).

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) (emphasis added).

Defendants' construction should be rejected.

### B.      "Virtual Private Networks"; "Virtual Private Network"

| Term to be Construed | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| virtual private networks (VPNs)<br><br>'997 Patent, Claims 1, 3, & 11 | two or more approximations of a private network across a public network using encryption to privatize communication | private networks of securely connected appliances across a public network |

| Term to be Construed | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| virtual private network (VPN)<br><br>'525 Patent, Claims 13 & 14 | an approximation of a private network across a public network using encryption to privatize communication | private network of securely connected appliances across a public network |

Defendants contend that Plaintiff's proposed construction of "VPN" should not include the phrase "an approximation of a network." Defendants' Brief at 7. But Plaintiff's proposed construction does not; it includes "an approximation of a *private* network." This distinction highlights exactly why Defendants' arguments fail, as Defendants confuse the notion of *private networks* and *virtual private networks*. They are distinct, hence the use of the word "virtual."

A public network is a network that is public, such as the Internet. A private network is a network that is not public and typically made up of physically segregated, dedicated lines that do not carry public traffic. An example of this includes a large corporation's internal private network where two offices are interconnected through a dedicated physical connection (*e.g.* T-1, T-3) that is not connected to the Internet. In this example, it is impossible to communicate with someone on the Internet, because the lines are physically separate.

In contrast, a virtual private network is a *logically private* network (*c.f.* physically separate) established over a public network such as the Internet. At its essence, a VPN logically simulates a private network but is not a private network. In this regard, it is "an approximation of a private network," but yet, not a private network.

Defendants argue that Plaintiff's proposed construction should exclude "encryption." Defendants' Brief at 9. Essentially, Defendants argue that the specification distinguishes between "VPN" and "encryption" and therefore VPN cannot include encryption as Plaintiff proposes. But Defendants' argument is predicated on an intentional mischaracterization of the intrinsic record.

First, Defendants argue that "the specification treats encryption as distinct from VPNs" *See id*. For this, they paraphrase the description in the '997 patent, 9:25-31 that reads: "[a]lternative embodiments may exclude encryption and ***[be implemented with]*** virtual private networks including public non-encrypted information, public Internet interfaces or over private switched networks." *See id*. (modification by Defendants). But, Defendants' insertion of the bracketed text in lieu of the actual language is calculated and misleading. The actual text reads: "may exclude encryption and virtual private networks" *not* may exclude encryption and ***[be implemented with]*** virtual private networks. The entire passage demonstrates that they are incorrect:

> For security purposes all connections that traverse across the open Internet **435** are preferably secured by the use of encryption running within a virtual private network. Alternate embodiments may exclude encryption and virtual private networks including public nonencrypted information, public Internet interfaces or over private switched networks.

'997 patent, 9:25-31. Thus, the specification describes as a preferred embodiment a VPN enforced with encryption, and as an alternative embodiment excluding VPNs and encryption on some channels. There is no statement that VPNs exclude encryption. Only by manipulating the plain language of the specification can Defendants muster an argument.

Moreover, Defendants argue against the inclusion of "encryption" but at the same time propose a construction for VPN that includes "secure[] connections." As a practical matter, an encrypted connection *is* a secured connection. Defendants' proposed construction belies Citrix's own definition of VPN. According to the Citrix Online Glossary, Defendant Citrix understands a VPN to be "a private communication channel that interconnects networks through primarily public infrastructures (e.g. the Internet)....SSL VPNs, provide security and encrypted communications through the secure sockets layer tunneling protocols." CITRIX ONLINE GLOSSARY available at: https://www.citrix.com/glossary. This definition contradicts Defendants' proposed construction that a VPN is a private network, and instead refers to a VPN as a private channel which supports

4

Plaintiff's construction.  Further, Citrix's definition includes the construction of encryption, further supporting Plaintiff's construction.

Second, the citation that Defendants cite above relates to an alternative embodiment *that describe claims that do not contain the VPN limitation.*  For example, claim 1 of the '525 patent does *not* contain the VPN limitation, but does teach a device "coupled to the Internet."  This is instructive because claim 1 teaches a system that mixes various data streams over a public network (*e.g.*, the Internet) but without a VPN.  This comports with and supports Plaintiff's construction of virtual private networks.

Similarly, Defendants argue that U.S. Patent No. 7,664,056 (not asserted or at issue in this matter) somehow supports their point because claims 1 and 7 of that patent contains a VPN limitation and dependent claims 5 and 8 describe encryption, that VPN cannot include encryption. Defendants' Brief at 9.  But though it is true that claim 1 contains a VPN limitation, dependent claim 5 specifically relates to "encrypting multicast IP packets."  Defendants' Brief, Ex. 5.  Thus, the encryption is employed for a particular purpose, and adds a material limitation to VPN.

C.    **"Virtual Private Network Tunnel" or "Virtual Private Network (VPN) tunnel" or "VPN tunnel"**

| Term to be Construed | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "virtual private network tunnel" or<br><br>"virtual private network (VPN) tunnel" or<br><br>"VPN tunnel"<br><br><br>'525 Patent, Claims 5 & 7<br><br>'332 Patent, 1 & 5 | *See* VPN, *supra.*<br><br>"tunnel": encapsulation | secure connection between two appliances in a private network across a public network |

The only additional word in this grouping of terms relative to VPN, *supra*, is "tunnel."  The essence of tunneling is encapsulation, meaning the technical mechanism whereby separateness is achieved across a public network.  As set forth in the Microsoft Computer Dictionary:

> tunnel: *vb*. to encapsulate or wrap a packet or a message from one protocol in the packet for another.  The wrapped protocol is then transmitted over a network via the protocol of the wrapper.

MICROSOFT COMPUTER DICTIONARY, 4th ed. (1999) at p. 453 (attached as **Exhibit 1**).  A person of ordinary skill in the art would understand the phrase consistently with Plaintiff's proposed construction.

For the reasons set forth above, a VPN is not a "private network."  It is a virtual private network.  For this additional reason, Defendants' proposed construction should be rejected.

**D.**       **"Conferencing Server"—[AGREED]**

| Term to be Construed | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "conferencing server" | server for managing a conference | server for managing a conference |

The parties have agreed on the proposed construction set forth above.

**E.**       **"Authenticating" / "Authenticated"**

| Term to be Construed | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "authenticating / authenticated"<br><br>'997 Patent, Claims 1, 3, & 11 | No construction necessary.<br><br>*or*, in the alternative:<br><br>establishing authorization. | verifying the identify of / verified |

First, this claim term requires no construction as a members of the jury would readily understand "authentication."  In the event that the Court determines the term does require construction, the term means "establishing authorization."

The main difference between the parties construction is Defendants' would require that an identity be verified.  Defendants' argument—"authenticating' means determining that something is authentic, such as verifying a person's identity—not granting access to something"—leaves vague whether establishing authorization to join a conference call by a group code is sufficient.  A person of ordinary skill in the art would understand that "authenticating" in this context would include establishing authorization, such as through a passcode.

**F.      "The System Comprising …Each Of The Multicast Appliances Receiving The First Message … One Or More Of The Participants Communicating …The Telephone Participant Provides … The Telephone Participant Speaks …. "**

| Term to be Construed | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "the system comprising … each of the multicast appliances receiving the first message … one or more of the participants communicating … the telephone participant provides … the telephone participant speaks …." '997 Patent, Claims 11, 12, 13, & 14 | Not indefinite. | Indefinite as directed to more than one statutory class of subject matter, i.e., a system and a method. |

As set forth in Meetrix's opening brief, the "system for adding a telephone participant to a multi-participant conference" is designed to accommodate and facilitate human interaction. Indeed, without human interaction the system is of little or no value.

But Defendants' position that an accused infringer would be confused by the alleged mixing of method and system steps can be summarily rejected.  The subject claim limitations describe the roles of the claimed participants, as in *Biosig*.  The claim is directed to a system, not

the participants themselves.  The participants provide input to the system, which is handled in the manner claimed.  *See Biosig Instruments, Inc. v. Nautilus, Inc*., 715 F.3d 891, 904 (Fed. Cir. 2013) (finding as definite an apparatus claim that included functional language describing how a claimed heart rate monitor is held by a user, calculates the user's heart rate, and displays the user's heart rate).

### G.    "Moderator"

| Term to be Construed | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "Moderator"<br><br>'525 Patent, Claims 1, 5, 9<br><br>'332 Patent, Claim 1, 2, 3 & 5 | No construction necessary. | Conference participant equipped to dial out to the PSTN client(s) or have the PSTN client(s) dial into it |

This claim term requires no construction, as a jury would understand "moderator" to mean a host of a conference.  Defendants argue that because Plaintiff "has not agreed to accept [Defendants' proposed] construction," nor offered its own, that "there is evidently a dispute to be resolved."  Defendants' Brief at 16.  However, this is not the law.  "[D]istrict courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims."  *O2 Micro v. Beyond Innovation*, 521 F.3d 1351, 1362-63 (Fed. Cir. 2008) (emphasis in original).

> [A] district court is not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims.

*Innovative Communications Tech., Inc. v. Vivox, Inc.*, 2012 WL 5331573, *4 (E.D. Va. 2012) (citing *O2 Micro*, 521 F.3d at 1362).  It is incumbent on Defendants to state a dispute; absent such a dispute, the Court need not do Defendants' bidding and construe every term they raise.

If a claim term does not possess any relevant, latent ambiguities, was not specially defined by the patentee in the specification, was not the subject of a disclaimer during prosecution, and is

not overly technical or legalistic in nature, then the term need not be replaced with any new language during claim construction. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("We, however, recognize that district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."); *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy."). In fact, doing so under such circumstances would be a needless exercise of replacing a common, well understood term with a synonym, serving no purpose at all except, perhaps, to introduce mischief into the process. *See C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 863 (Fed. Cir. 2004) (agreeing that "merely rephrasing or paraphrasing the plain language of a claim by substituting synonyms does not represent genuine claim construction").

In Defendants' proposed construction, Defendants are attempting to import limitations about the moderator having a telephone with PSTN capability. There is nothing inherent in being system moderator that would require that capability. Claim 1 of the '525 patent, for example, claims mixers and transport outputs, and does not claim actions taken by the moderator, such as establishing a PSTN connection.

### H.    "A Non-Transitory Computer-Readable Medium Including Instructions For A Multi-Participant Conference Process To Be Executed By A Local Moderator Computer"

| Term to be Construed | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| A non-transitory computer-readable medium including instructions for a multi-participant conference | No construction necessary. Preamble is not limiting with respect to the computer that executes the code. | Preamble is limiting: Software application for performing a multi-participant conference, which is persistently stored in a form a |

| Term to be Construed | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| process to be executed by a local moderator computer<br><br>'525 Patent, Claims 9, 10, 11, 12, 13, 14, 15, & 16 | | computer can read, that is run by a local moderator computer. |

There is nothing in the subject claims that mandates deviating from the general rule that preambles are non-limiting. The location to run code is a statement of intended use. When, as here, a structurally complete claim follows, such statements are non-limiting. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999); *see also Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997) ("where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention, the preamble is not a claim limitation").

Claim 9 identifies a complete invention, including five receiving steps relating to different aspects of the system, two mixing steps also identifying the data to be mixed, a transmitting step and a compressing step. The preamble in no way provides further structure to the claimed method. *See* '525 patent, claim 9. The remaining claims to which this preamble is pertinent are dependent on claim 9 and draw no additional support from the preamble.

I.    **"First Mixer"; "Second Mixer"; "Third Mixer"**

| Term to be Construed | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "first mixer"<br><br>'525 Patent, Claim 1 | No construction necessary. | a mixer that is different from the second mixer |
| "second mixer"<br>'525 Patent, Claim 1 | No construction necessary. | a mixer that is different from the first mixer |

| Term to be Construed | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "third mixer"<br><br>'525 Patent, Claim 2 | No construction necessary. | a mixer that is different from the first and second mixers |

There is no dispute with the meaning of the word "mixer" that Defendants have identified, but Defendants would interject the word "different," into each construction, without explaining what makes them so. "It is widely understood that the terms 'first' and 'second' in a patent claim *are modifiers, used to delineate multiple instances of the same or similar structure.*" *Stone Basket Innovations LLC v. Cook Med. LLC*, No. 2:15-CV-464-JRG-RSP, 2016 WL 1182926, at *5 (E.D. Tex. Mar. 28, 2016) (citing *3M Innovative Properties co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003) and holding that no construction was necessary for "first" and "second."). The *Stone Basket* case is instructive. Multiple "instances" of the same structure could be the same server running multiple instances of the same routine with different inputs. Or it could be the same routine addressing multiple inputs.

Defendants' reliance on *Gillette Co. v. Energizer Holdings, Inc*. is misplaced. 405 F.3d 1367 (Fed. Cir. 2005). In *Gillette*, the issue was whether or not a claim that recited a first, second and third blade was necessarily limited to just that – 3 blades – and no more (*e.g.* Energizer's QUATTRO™ four-bladed razor). *Id.* at 1368 (noting that the district court erred in construing the claims of the '777 patent to only three blades). The Federal Circuit reasoned "[t]he claim is [] clearly not using the ordinals—first, second, third—to show a consecutive numerical limit but only to distinguish or identify the various members of the group." *Id.* at 1373. "More important, the language of the claim itself, with its open transition phrases and use of ordinals t*o distinguish but not limit claim elements*, shows that the invention embraces 'a plurality of blades' [and not just three]." *Id.* at 1374. Thus, it was error to construe use of ordinary words—first, second, and

third—to narrow the claim, itself, like Defendant proposes here.   Accordingly, Defendants'
proposed construction should also be rejected.

In support of their argument, Defendants state that the claims themselves recite what is
being mixed:

> The "first mixer" mixes "a Public Switched Telephone Network (PSTN) client
> audio data stream with a moderator audio-video data stream into a first mixed data
> stream"; the "second mixer" "mixes the moderator audio video data stream…"

Defendants' Brief at 22-23 (quoting '525 patent, claims 1 & 2).   Defendants are correct, *but this
undermines their own argument*.   "Quite apart from the written description and the prosecution
history, the claims themselves provide substantial guidance as to the meaning of particular claim
terms."   *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (citation omitted).   Since
the claims of the '525 patent recite exactly what is being mixed, no further construction is
necessary.   Indeed, to adopt Defendants' constructions would likely make the claim terms *more*
confusing.

Finally, Defendants highlight three separate mixers in Fig. 6 from which they apparently
infer that the first, second and third mixers must be physically separate structures.   *See* Defendants'
Brief at 22.   But Defendants misunderstand the nature of system flowcharts; the mixers shown can
be accomplished by any processing function, as reflected by the boxes and circles in the chart.
They are not intended to be circular physical structures, and a person of ordinary skill would not
understand them in that way.

Indeed, the specification describes the preferred embodiment in Figure 6 as achieved with
a system running software to achieve mixing:  "[i]t may be assumed in this embodiment that the
functions and features of FIG. 6 are running on general-purpose hardware using various software
to accomplish the tasks at hand."  '525 patent, 7:38-41.  Thus, the first, second and third mixer can

be achieved logically with one computer running various software routines, contrary to the Defendants' proposed construction.

**J.      "Audio-Video Data Stream" / "Audio-Video Stream"**

| Term to be Construed | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| audio-video data stream / audio-video stream<br><br>'525 Patent, Claims 1, 2, 4, 5, & 7 | media data transmitted in a relatively continuous fashion. | a single stream of combined audio and video data |

The issues with regard to this disputed claim term are two-fold: (1) whether "audio-video data" can include audio, video and *collaboration data* (it can); and (2) whether "stream" is limited to combined audio and video data (it is not).  Each is addressed below.

First, Plaintiff's construction of the term "audio-video data stream" to mean "*media* data," correctly captures the thrust of the patented invention – sharing audio, video and collaboration data over a hybrid network.  This is squarely described in the specification with regard to one preferred embodiment:

> FIG. 3 illustrates one embodiment of the invention. This embodiment allows ***audio video and data collaboration information*** to be securely transferred between a plurality of local and remote clients preferably within a virtual private network….The embodiment integrates ***full duplex audio, video, and data connections*** between clients conferencing on the Internet and clients conferencing on standard telephone systems.

'525 patent, 4:56-67 (emphasis added).  Additionally, the specification describes Fig. 4 with similar language:

> FIG. 4 illustrates one embodiment of the present invention. The system of FIG. 4 performs audio transport between multiple client groups who all share the same multicast group address such that ***audio/video and data*** may be shared interactively without the need of central servers. Multicast protocol and encapsulated *media* packets are implemented ***so that media data*** may be routed through public or private IP networks without the need for special hardware and software during the majority of the network transport….Multicasting enabled appliances **447**, **449**, **451**,

> **453**, **455**, and **457** are used at the origination or termination points for ***audio, video, or data (media data)*** to and from the backbone of the transport path.

'525 patent, 5:36-53 (emphasis added).  The patented invention and the claims themselves teach not only sharing audio and video, but also collaboration information.   Indeed, Defendants apparently concede this concept:  "media data can refer to just audio, just video, or just another type of data [*i.e.* collaboration data] which is neither audio nor video."  Defendants' Brief at 20. Yet, Defendants' proposed construction attempts to improperly narrow the claim term to solely audio and video.   In contravention of Federal Circuit law, Defendants' proposed construction would improperly exclude those embodiments where collaboration data is also shared.  *Chimie v. PPG Industries, Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005); *see Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276-77 (Fed. Cir. 2008) ("We normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification ...").   Thus, the Court should adopt Plaintiff's construction since "media" includes collaboration data, as opposed to just "audio and video" as Defendants' suggest.

Second the Defendants' argument with regard to "streaming" is unsupported by intrinsic or extrinsic evidence.  Defendants posit that "streaming" can only mean *a single stream*.  In support of their position, Defendants offer an analogy of "streaming" sugar and salt to make cookies: "having a stream of salt and sugar would require combing the salt and sugar, and then having them flow down the same chute."  Defendants' Brief at 20.  "Streaming" is the notion of providing something in a continuous fashion – not whether two or more ingredients are streamed separately or combined.  Even applying their analogy, were portions of salt and sugar poured into a bowl in a physical stream, there is no reason to believe that the "stream" would have to be equal parts of salt and sugar at all times, or that at any given moment salt or sugar would be part of the received flow.

14

### K.    "Mixed Audio-Video Data"

| Term to be Construed | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "mixed audio-video data"<br><br>'525 Patent, Claims 9, 13, & 15 | No construction necessary. | a mix of both audio and video data |

Defendants have merely rearranged the words of the claim term to be construed, and therefore have not provided a meaningful definition. *See Profectus*, 2014 WL 1575719, at \*6-7 ("The Court also finds unhelpful Plaintiff's circular dictionary definition … This definition is simply a recitation of the words the Court is seeking to define."); *Abbott Labs*, 544 F.3d at 1360.

### L.    "First Mixed Data Stream"; "Second Mixed Data Stream"; "Third Mixed Data Stream"

| Term to be Construed | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "first mixed data stream"<br><br>'525 Patent, Claims 1 & 8 | No construction necessary. | Data stream that only contains a mix of both the PSTN client audio data stream and the moderator audio-video data stream |
| "second mixed data stream"<br>'525 Patent, Claims 1 & 6 | No construction necessary. | Data stream that only contains a mix of both the moderator audio-video data stream and the remote client audio-video data stream |
| "third mixed data stream"<br>'525 Patent, Claim 2 | No construction necessary. | Data stream that only contains a mix of both the audio data from the PSTN client and the audio-video data stream from the remote client |

As set forth above, "[i]t is widely understood that the terms 'first' and 'second' in a patent claim are modifiers, used to delineate multiple instances of the same or similar structure." *Stone Basket Innovations LLC v. Cook Med. LLC*, No. 2:15-CV-464-JRG-RSP, 2016 WL 1182926, at

*5 (E.D. Tex. Mar. 28, 2016) (citing *3M Innovative Properties co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003) and holding that no construction was necessary for "first" and "second.").

With respect to the notion that the data stream must exclude all data other than that which is included in Defendants' construction, there is no such language of exclusion in the claim. Defendants' proposed construction is inconsistent with patent law; if so, Defendants could avoid infringement by adding one bit that does not meet their fabricated exclusion. That is contrary to "horn book law."

> Modification by mere addition of elements of functions, whenever made, cannot negate infringement without disregard of the long-established, hornbook law expressed in *Cochrane v. Deener*, 94 U.S. 780, 786 (1876); *Eastern Rotorcraft Corp. v. United States*, 397 F.2d 978, 981 (Ct. Cl. 1968) (infringement not avoided by adding an additional element); [] *Acme Highway Products Corp. v. D.S. Brown Co.*, 473 F.2d 849, 855 (6th Cir.), *cert. denied* 414 U.S. 824 (1973) ("An accused device cannot escape infringement by merely adding features, if it otherwise has adopted the basic features of the patent.").

*Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1482 (Fed. Cir. 1984).

Defendants' contention that the claims must be construed to exclude certain source data contradicts the very case law on which Defendants purport to rely. In *Gillette*, the Federal Circuit held that "the language of the claim itself, with its open transition phrases and use of ordinals" was used "to distinguish but not limit claim elements." *Gillette*, 405 F.3d at 1374. In other words, although the claims referred to three blades, it was error to limit the scope of the claims to merely three blades. *Id.* at 1373. That is no different than the position that Defendants advance here.

For example, Defendants argue that the "'first mixed data stream' does not include the 'remote client audio-video data stream' because the 'first mixed data steam' is transmitted to the 'at least one remote client.'" Defendants' Brief at 24. However, this construction would necessarily limit the claims to a three participant conference call. In the event that four participants

engaged in a conference—*two* remote clients, a PSTN participant and moderator—Defendants'
proposed construction would improperly limit the scope of the claims.  Thus, to adopt Defendants'
construction would be to limit the claims to three participants and no more—contrary to the law
in *Gillette*.

> **M.**   **"First Mixed Audio Data"; "Second Mixed Audio Data"; "Third Mixed Audio
> Data"**

| Term to be Construed | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "first mixed audio data"<br><br>'332 Patent, Claim 1 & 6 | No construction necessary. | Audio data that only contains a mix of both the first audio data from the PSTN client(s) and the second audio data from the moderator |
| "second mixed audio data"<br><br>'332 Patent, Claim 1 & 7 | | Audio data that only contains a mix of both second audio data from the moderator and the third audio data from the remote client(s) |
| "third mixed audio data"<br><br>'332 Patent, Claim 2 | | Audio data that only contains a mix of both the first audio data from the PSTN client(s) and the third audio data from the remote client(s) |

As with respect to the data stream limitations above, the claim term requires that first,
second and third mixed audio data have audio data that has been mixed.  There is no limitation
express or inherent about other data that may or may not be present.  *See supra.*

Dated: September 11, 2017                              Respectfully submitted,

                                                      /s/ Andrew G. DiNovo
                                                      Andrew G. DiNovo
                                                      Texas State Bar No. 00790594
                                                      adinovo@dpelaw.com
                                                      Daniel L. Schmid
                                                      Texas State Bar No. 24093118
                                                      dschmid@dpelaw.com
                                                      DINOVO PRICE ELLWANGER, LLP
                                                      7000 N. MoPac Expressway, Suite 350
                                                      Austin, Texas  78731
                                                      Telephone: (512) 539-2626
                                                      Facsimile:  (512) 539-2627


                                                      John D. Saba, Jr.
                                                      Texas State Bar No. 24037415
                                                      john@wittliffcutter.com
                                                      WITTLIFF CUTTER AUSTIN, PLLC
                                                      1803 West Ave.
                                                      Austin, Texas 78701
                                                      Telephone: (512) 960-4388
                                                      Facsimile:  (512) 960-4869

                                                      **Attorneys for Plaintiff**
                                                      **MEETRIX IP, LLC**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule 5(b)(2)(E) on September 11, 2017.  As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule 5(b)(2)(E) and by email.

                                                      /s/ Andrew G. DiNovo