## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

Meetrix IP, LLC,

        Plaintiff,

v.

Citrix Systems, Inc., GetGo, Inc., LogMeIn, Inc.,

        Defendants.

Civil Action No. 1:16-cv-1033-LY

## DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 3

    A.    "multicast appliances" .......................................................................... 3

    B.    "virtual private networks" and "virtual private network tunnel" .......... 5

        1.    A "virtual private network (VPN)" is a network, not something
            that uses encryption to approximate a network .......................... 6

        2.    A VPN securely connects appliances ........................................ 7

        3.    A "VPN tunnel" is a connection in the VPN, not "encapsulation" .......... 8

    C.    "authenticating" / "authenticated" ........................................................ 9

    D.    Claim 11 of the '997 Patent and its Dependent Claims are Indefinite for
        Mixing Statutory Classes of Subject Matter ....................................... 9

    E.    "moderator" ........................................................................................... 12

    F.    "A non-transitory computer-readable medium including instructions for a
        multi-participant conference process to be executed by a local moderator
        computer" ............................................................................................... 13

    G.    "audio-video [data] stream" and "mixed audio-video data" ................ 14

    H.    "first/second/third mixer" ...................................................................... 17

    I.    first/second/third mixed data stream and first/second/third mixed audio
      data ......................................................................................................... 18

III.  CONCLUSION ................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Adv. Fiber Techs. Trust v. J & L Fiber Servs., Inc.*,
   674 F.3d 1365 (Fed. Cir. 2012)........................................................................6, 7

*Andersen Corp. v. Fiber Composites, LLC*,
   474 F.3d 1361 (Fed. Cir. 2007)...........................................................................5

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
   715 F.3d 891 (Fed. Cir. 2013)......................................................................10, 11

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
   783 F.3d 1374 (Fed. Cir. 2015).........................................................................12

*Docusign, Inc. v. Sertifi, Inc.*,
   468 F. Supp. 2d 1305 (W.D. Wash. 2006).......................................................8, 14

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010).........................................................................20

*Gemalto SA v. HTC Corp.*,
   754 F.3d 1364 (Fed. Cir. 2014).........................................................................20

*Gillette Co. v. Energizer Holdings, Inc.*,
   405 F.3d 1367 (Fed. Cir. 2005).........................................................................17

*Indacon, Inc. v. Facebook, Inc.*,
   824 F.3d 1352 (Fed. Cir. 2016)...........................................................................5

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005).........................................................................11

*j2 Glob. Commun., Inc. v. Venali, Inc.*,
   No. CV 04–01172 DDP, 2011 WL 3204537 (C.D. Cal. Mar. 4, 2011) .................18

*In re Katz Interactive Call Processing Patent Litig.*,
   639 F.3d 1303 (Fed. Cir. 2011)....................................................................10, 11

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.*,
   520 F.3d 1367 (Fed. Cir. 2008).........................................................................11

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   134 S. Ct. 2120 (2014).....................................................................................12

*Novosteel SA v. U.S. Bethlehem Steel Corp.*,
    284 F.3d 1261 (Fed. Cir. 2002)......................................................................8, 14

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................................. *passim*

*Rembrandt Data Techs., LP v. AOL, LLC*,
    641 F.3d 1331 (Fed. Cir. 2011).............................................................................10

*Renishaw PLC v. Marposs Societaˊ per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998)...................................................................5, 13, 19

*Springs Indus., Inc. v. Am. Motorists Ins. Co.*,
    137 F.R.D. 238 (N.D. Tex. 1991) ...................................................................8, 14

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed.Cir.1996)..................................................................................6

## STATUTES

35 U.S.C. § 112.......................................................................................................11

## I.      INTRODUCTION

Defendants Citrix Systems, Inc., GetGo, Inc., and LogMeIn, Inc. (collectively "LogMeIn") hereby respond to plaintiff Meetrix IP, LLC's ("Meetrix's") opening claim construction brief (D.I. 59).

Although the Court instructed the parties to base their claim construction positions on the intrinsic record[1] and Meetrix committed to do so,[2] Meetrix has failed to support its positions with intrinsic evidence for several claim terms.  For example, Meetrix offers no intrinsic evidence to support its proposed constructions of the virtual private network (VPN) or VPN tunnel claim terms.  Rather, Meetrix relies exclusively on extrinsic evidence to support its constructions of these terms and its construction of "authenticating."[3]  In addition, Meetrix cites no evidence—intrinsic or extrinsic—to support its positions that the first/second/third mixer, first/second/third mixed data stream, and first/second/third mixed audio data claim term should not be construed.  In addressing whether the preamble of claim 9 of the '525 patent is limiting, Meetrix not only fails to cite any evidence but further does not even make an argument to support its position that the preamble is not limiting.

Meetrix's inability to support its claim constructions with intrinsic evidence is telling, and its disregard for the intrinsic record is not limited to its claim construction arguments.  In

---

[1] Mar. 21, 2017 Tr. (D.I. 45) at 13:13-19 ("THE COURT: …  I have yet to see the disputed claims that can't be construed from the internal record.  And I will tell you, if it will help you in coming up with the way you're going to approach claim construction, that you're going to get a whole lot farther with me to tell me where in the internal record your position is supported."); *id.* at 14:3-8 ("THE COURT: …  [Y]ou can construe a patent just the same way you can construe a statute.  You look for how the term[] is used.  You look for the surrounding areas of it.").

[2] Mar. 21, 2017 Tr. (D.I. 45) at 17:3-5 ("MR. DINOVO: We'll base our brief on the intrinsic record.").

[3] The Federal Circuit has cautioned against placing undue reliance on the extrinsic record, noting extrinsic evidence is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005) (*en banc*).

laying the groundwork for its constructions in its "Background of the Patents," Meetrix strays far from the contents of the patents-in-suit.  After presenting Figure 3, Meetrix purports to discuss the patents in four paragraphs lacking any citations to the intrinsic record.  *See* D.I. 59 at 2-3. The vast majority of the discussion in those paragraphs has no basis in the intrinsic record.  For example, Meetrix states that a VPN is "rendered 'virtually private' by blocking anyone outside of a defined list of private users."  *Id.* at 2.  The asserted patents never refer to any "defined list" of users for a VPN, where any such list exists, or how a potential conference participant can join such a list.  Meetrix also asserts that VPNs "are implemented using a protocol called SSL/TLS" (*id.*), but neither the SSL nor TLS protocol is mentioned anywhere in the patents-in-suit. Meetrix is improperly reading the claims onto the accused products' functionality, and misleadingly passing this off as description of the patents-in-suit.   In addition, Meetrix characterizes "[t]unneling" as "a method for transmitting types of packets through the network when those packet types have header formats that are not necessarily compatible with the network" (*id.* at 2-3), but the patents-in-suit never mention "tunneling" or a "header"—let alone support the association Meetrix advocates.

The Court should reject Meetrix's attempts to rewrite its patents to stretch the claims beyond the particular implementations of audio-video conferencing described, without regard for the patents' actual contents.  Instead, the Court should adopt LogMeIn's constructions, which are well-supported by the intrinsic record, for the reasons explained in LogMeIn's opening brief and set forth below.

## II.     ARGUMENT

### A.     "multicast appliances"

| Disputed Term[4] | Meetrix's Construction | LogMeIn's Construction |
|---|---|---|
| "multicast appliances" ('997 patent, claims 1, 3, 5, 11, & 13) | devices that provide information destined to multiple locations via a single transmission | devices that use a group address to send information to multiple locations via a single transmission |

The parties agree that the dispute is whether multicast appliances transmit information to multiple locations via a single transmission by *using a group address*, per LogMeIn's construction. *See* D.I. 59 at 5. As LogMeIn explained in its opening brief, both the claim language and the specification support LogMeIn's construction, while Meetrix's construction is overbroad because it encompasses devices that indiscriminately broadcast information to all connected devices via a single transmission or that send information to multiple locations via a single transmission without using the multicast protocol. *See* D.I. 60 at 5-6. Meetrix cites two aspects of the intrinsic record to argue that multicast appliances need not use group addresses, but neither supports Meetrix's position.

First, Meetrix points to a passage in the Background of the Invention that describes the multipoint control unit (MCU) in the prior art system of Figure 1. *See* D.I. 59 at 5 (quoting '997 patent at 2:33-42).[5] Meetrix correctly states that this prior art MCU "can determine whether to unicast or multicast the audio and video streams," emphasizing the following statement in the specification: "Another useful job of the multipoint control unit 203 is to determine whether to unicast or multicast the audio or video streams." *Id.* However, Meetrix leaps to the unsupported conclusion that "the multicast appliances need not convey a communication with a group

---

[4] Independent claims are underlined in this and subsequent tables.

[5] The patents-in-suit are attached as Exhibits 1 to 3 to the Declaration of Nathanial McPherson, which accompanies LogMeIn's Opening Claim Construction Brief. *See* D.I. 60-1.

address" because "that determination can be made at the MCU." *Id.*   The passage in the Background does not support Meetrix's conclusion because it says nothing about *how* the prior art MCU performs either unicast or multicast and does not say how the MCU relates to the claimed "multicast appliances."   Indeed, nothing in the patents-in-suit sheds further light on either issue.   There is no MCU shown in any of the embodiments of the alleged invention.   The only discussion of an MCU in connection with an "embodiment of the present invention" refers to using the MCU to "insure[] communication capability" after the media stream has been "transcoded" into a standardized format.   '997 patent at 5:41-44.

In contrast to the uninformative Background passage cited by Meetrix, the passages LogMeIn cited relate to the alleged invention and describe how the appliances perform their multicasting function.   *See* D.I. 60 at 6 (citing '997 patent at 4:59-67; 6:48-52; 7:24-26). Although a group address may be assigned by other components, *e.g.*, the VPN bridge (*id.* at 6:58-60), the specification repeatedly teaches that the appliances rely on using a group address to perform their multicast function.   *See*, *e.g.*, '997 patent at 4:59-67 ("configuring the IP packet **with a group address according to a multicast protocol** to create a multicast IP packet … and **the appliances providing the multicast data to each of the other participants in the group address**"); 6:48-52 ("**[m]ulticast** enabled routing" involves sending "media data" using "**one or more group addresses**").[6]

Second, Meetrix argues that interpreting "multicast appliances" to require using a "group address" to send information would "run[] afoul of the doctrine of claim differentiation," citing claim 15's requirement of an "IP packet with a group address configured according to a multicast protocol to create a multicast IP packet."   D.I. 59 at 5 (quoting claim 15).   Meetrix ignores that

---

[6] All emphasis added unless otherwise noted.

claim 15 adds another requirement: "the gateway transform[s] the digital voice data into IP packets." '997 patent at cl. 15.  This requirement alone differentiates dependent claim 15 from independent claim 11, which does not recite a "gateway."  Consequently, adopting LogMeIn's proposed construction of "multicast appliances" would not cause claim 15 to have the same scope as claim 11, so the doctrine of claim differentiation is inapplicable.  *See Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352, 1358 (Fed. Cir. 2016) ("we have declined to apply the doctrine of claim differentiation where, as here, the claims are not otherwise identical in scope"); *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1370 (Fed. Cir. 2007) ("A further reason for not applying the doctrine of claim differentiation in this case is that the [] claims are not otherwise identical … and thus the district court's construction does not make the composite composition claims redundant.").

In sum, Meetrix has identified no intrinsic evidence to support its position that "multicast appliances" do not "use a group address to send information to multiple locations via a single transmission."  In contrast, LogMeIn's proposed construction "stays true to the claim language and most naturally aligns with the patent's description of the invention," and therefore should be adopted.  *See Phillips*, 415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societá per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

**B.     "virtual private networks" and "virtual private network tunnel"**

| Disputed Term | Meetrix's Construction | LogMeIn's Construction |
|---|---|---|
| "virtual private networks" ('997 patent, claims 1, 3, & 11)<br><br>"Virtual Private Network (VPN)" ('525 patent, claims 13 & 14) | "Virtual Private Network (VPN)": an approximation of a private network across a public network using encryption to privatize communication | private network(s) of securely connected appliances across a public network |

| | | |
|---|---|---|
| "virtual private network tunnel" ('525 patent, claims 5 & 7)<br><br>"Virtual Private Network (VPN) tunnel" or "VPN tunnel" ('332 patent, claims 1 & 5) | VPN, see above. "tunnel": encapsulation | secure connection between two appliances in a private network across a public network |

### 1. A "virtual private network (VPN)" is a network, not something that uses encryption to approximate a network

Meetrix cites no intrinsic evidence to support its proposed constructions.  Instead, Meetrix relies exclusively on a dictionary definition to argue that a "virtual private network (VPN)" should be construed as "an approximation of a private network using encryption to private communication."  D.I. 59 at 6.  This dictionary definition does not even support Meetrix's proposed construction.  The definition refers to a VPN having "nodes on a public network" but there is no reference to "an approximation" or other suggestion in the definition that a VPN encompasses something that is similar to, but not actually, a network.  *Id.* (quoting *Microsoft Internet and Network Dictionary* at 278 (2003)).  Meetrix provides no support for its request that the Court rewrite the claim term "network" to "an approximation" thereof.[7]

Moreover, dictionary definitions may be consulted only so long as they do not contradict the intrinsic record.  *See Phillips*, 415 F.3d at 1322-23 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996)); *see also Adv. Fiber Techs. Trust v. J & L Fiber Servs., Inc.*, 674 F.3d 1365, 1374 (Fed. Cir. 2012) ("the district court erroneously construed 'perforated' using extrinsic evidence that contradicts the intrinsic evidence of record").  Here, Meetrix relies on a dictionary definition that runs counter to the intrinsic evidence.  Meetrix tries

---

[7] Meetrix cannot even keep its attempted rewrite straight.  When Meetrix first explains what a VPN is, Meetrix states that "[a] VPN *is a network* which is a subset of a public network" (*id.* at 2)—not "an approximation" thereof.

- 6 -

to use the reference to "encryption technology" in the definition to equate a VPN with the use of "encryption," regardless of whether there is actually a "network."

As LogMeIn pointed out in its opening brief (*see* D.I. 60 at 9), the patents-in-suit disclose that a VPN is distinct from encryption, teaching that encryption is preferably used with a VPN but that a VPN also can transmit public, non-encrypted information.  '997 patent at 9:25-31 (the specification refers to connections being "***preferably*** secured by the use of encryption running ***within*** a virtual private network" and to "virtual private networks including ***public non-encrypted information***").  This distinction is reinforced in the claims of the parent of the '997 patent, which (as here) refer to establishing VPNs in independent claims, and adds the feature of encrypting the information in dependent claims.  *See* '056 patent (D.I. 60-6) at cls. 1, 5, 7 & 8 (independent claims 1 and 7 recite "establishing a plurality of virtual private networks across the Internet between the multicast appliances" while dependent claims 5 and 8 add "encrypting the multicast IP packet").  Meetrix concedes that "claim terms in patents sharing a common specification and application should usually be given the same interpretation."  D.I. 59 at 4 (citing cases).

Accordingly, Meetrix's dictionary definition cannot be used to deviate from the intrinsic record, which distinguishes a VPN from encryption.  *See Adv. Fiber Techs. Trust*, 674 F.3d at 1374; *Phillips*, 415 F.3d at 1322-23.  The intrinsic record precludes defining anything that uses encryption as a VPN and rewriting the plain language of the claim term "virtual private ***network***" to be something less than a network.

### 2.      A VPN securely connects appliances

Meetrix has not disputed that a VPN securely connects appliances, per LogMeIn's construction of a VPN as a "private network of securely connected appliances across a public

network."[8]  As LogMeIn has explained, the intrinsic evidence teaches that the endpoints of the VPN are appliances by characterizing the VPNs as being established "between the multicast appliances" in the claims themselves ('997 patent at cls. 1, 3 & 11) and stating that the appliances serve as "the origination or termination points" and are "at the edge of the network." *Id.* at 6:41-44; 7:10-12; *see also id.* at 4:25-27; 6:16-17; 6:58-67; Figs. 3-4.

### 3.    A "VPN tunnel" is a connection in the VPN, not "encapsulation"

Meetrix cites no evidence—intrinsic or extrinsic—to support its proposed construction of "tunnel" as "encapsulation."  As LogMeIn already has pointed out (*see* D.I. 60 at 10-11), the claims require data to be sent "across" or "through" a VPN tunnel, and therefore Meetrix's proposed construction, "encapsulation," is incorrect because a tunnel must provide a path for data to travel "across" or through." '525 patent at cls. 5, 7, 19, & 20; '332 patent at cls. 1, 5, and 8.  Meetrix concedes that a "tunnel is a data path."  D.I. 59 at 7.  Meetrix seeks to limit this data path to one "for encapsulated data" but the intrinsic evidence does not support this.  As LogMeIn previously explained, the patents-in-suit do not equate sending data through a VPN with encapsulating the data, but rather teach that encapsulated data can be sent through the public, open Internet.  *See* D.I. 60 at 11 (quoting '997 patent at 4:3-6 ("compressed digitized audio packet data is grouped into multicast packets and **encapsulated for traversal through the open Internet**"); 6:32-36 ("**encapsulated** media packets are implemented so that media data may be routed through **public** or private IP networks").

---

[8] Meetrix should not be heard to dispute this point for the first time in its reply.  *See*, *e.g.*, *Novosteel SA v. U.S. Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("[a]s a matter of litigation fairness and procedure, then, we must treat [an arguments raised for the first time in a reply brief] as waived"); *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) (striking new arguments and evidence regarding claim construction "which should have been addressed in [Plaintiff's] opening brief"); *Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (a reply brief that presents new arguments and evidence "deprives the nonmovant of a meaningful opportunity to respond").

### C.     "authenticating" / "authenticated"

| Disputed Term | Meetrix's Construction | LogMeIn's Construction |
|---|---|---|
| "authenticating" / "authenticated" ('997 patent, claims 1, 3, & 11) | No construction necessary. Or, in the alternative: Establishing authorization. | verifying the identify of / verified |

Meetrix cites no intrinsic evidence to support its proposal to rewrite "authenticating" to "authorizing."   As LogMeIn has pointed out, the claim language itself is "highly instructive," *Phillips*, 415 F.3d at 1314, because it distinguishes between an authorizing step—"the telephone participant providing conference ID information" to obtain access to the conference—and the step of "authenticating the telephone participant." '997 patent at cls. 1 & 3; *see also id.* at cl. 11.

Furthermore, authenticating and authorizing are distinct concepts.  By way of example, a bar manager may authenticate a driver's license by inspecting it under ultraviolet light, but if the driver's license shows that the person is under twenty-one years old then the manager will not authorize the bartender to pour the person a drink.  Conversely, the manager may authorize the bartender to pour a drink for a person who is under twenty-one years old based on a fake driver's license, which does not authenticate that the person's actual age.  This distinction in meaning is reflected in the claims themselves as well as both the technical and general-purpose dictionaries LogMeIn has cited.  *See* D.I. 60 at 12.

Accordingly, "authenticating" is appropriately construed as "verifying the identity of," as LogMeIn proposes.

### D.     Claim 11 of the '997 Patent and its Dependent Claims are Indefinite for Mixing Statutory Classes of Subject Matter

After reciting the case law regarding the indefiniteness of claims that mix apparatus and method claim forms (*see* D.I. 59 at 9-10), Meetrix argues, "It is clear from the context of the

claim, read as a whole, that the subject claim limitations describe the roles of the claimed participants, as in *Biosig*." D.I. 59 at 10 (citing *Biosig Instruments, Inc. v. Nautilus, Inc.*, 715 F.3d 891, 904 (Fed. Cir. 2013)). Meetrix's argument based on the Federal Circuit's 2013 *Biosig* decision fails for multiple reasons.

First, claim 11 of the '997 patent does not merely "describe the roles of the claimed participants" (D.I. 59 at 10), but rather recites multiple method steps requiring participants to take actions—communicate, provide information, and speak:

- "one or more of the **participants communicating** in the multi-participant video conferences"
- "wherein **the telephone participant provides** a conference ID information"
- "wherein **the telephone participant speaks** in the video conference"

'997 patent at cl. 11.[9] This claim language requiring conference participants to take actions is analogous to the claim language "wherein … callers digitally enter data" and "wherein … callers provide . . . data" in the claims invalidated for mixing system and method claim types in another case Meetrix cites, *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1318 (Fed. Cir. 2011). In that case, the Federal Circuit rejected the same argument Meetrix advances here that such claim language merely "defines a functional capability," explaining that it "is directed to user actions, not system capabilities." *Id.* Just as Katz's claims "create[d] confusion as to when directed infringement occurs because they [we]re directed both to systems and to actions performed by 'individual callers,'" claim 11 of the '997 patent creates the confusion because it is directed both to a "system" and to actions performed by individual participants. *Id.* Claim 11, like "Katz's claims[,] therefore fall[s] squarely within the rationale of *IPXL* and [is]

---

[9] Meetrix does not address LogMeIn's point that the claim phrase "each of the multicast devices receiving the first message" is also an impermissible method step that provides another basis for holding claim 11 indefinite. D.I. 60 at 155 (citing *See Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011) (affirming the indefiniteness of claims to a "data transmitting device" that included a method step of "transmitting the trellis encoded frames")).

indefinite." *Id.*; *see also IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) (affirming that a system claim reciting the method step "wherein … the user uses the input means" was invalid as indefinite).

Second, the Federal Circuit's 2013 *Biosig* decision does not provide guidance on the indefiniteness issue present here. That decision focused on whether the term "spaced relationship" described "the space between the live and common electrodes" with "sufficient clarity" to inform "skilled artisans as to the bounds of this disputed term." 715 F.3d at 898-99. At the end of its opinion, without any discussion of specific claim language, the Federal Circuit summarily dismissed Nautilus's additional argument that claim 1 impermissibly mixed an apparatus and method of use as "unpersuasive" because claim 1 recited no active method steps but rather only set the context for the system's "capability of substantially removing EMG signals" from the user of the "heart rate monitor."[10]  *Id.* at 904.

Third, the Supreme Court vacated the 2013 *Biosig* decision because the Federal Circuit applied too high a standard for indefiniteness, replacing the Federal Circuit's "'insolubly ambiguous' standard" with a lower standard of indefiniteness which applies where claims "read in light of the specification delineating the patent, and the prosecution history, fail to inform,

---

[10] The only other Federal Circuit case Meetrix cites where claims were not deemed indefinite for mixing claim types is *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367 (Fed. Cir. 2008). Meetrix merely cites this case for the broad proposition that "apparatus claims that use functional language are 'not necessarily indefinite.'" D.I. 59 at 9 (quoting *Microprocessor Enhancement*, 520 F.3d at 1375). While that is true—35 U.S.C. § 112, ¶ 6, permits functional claiming—it does not bear on whether claim 11 of the '997 patent impermissibly mixes system and method claim types. Meetrix does not attempt to analogize claim 11 of the '997 patent to the claims in *Microprocessor Enhancement*. There is no analogy because those claims recited a "method" to be performed "in a pipeline processor" and specified the "method steps" to be performed in this processor. *Microprocessor Enhancement*, 520 F.3d at 1374. By contrast, claim 11 of the '997 patent recites a "system" but includes active method steps performed by users of the system, which impermissibly mixes these claim types as the Federal Circuit held in *In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d at 1318, and *IPXL Holdings*, 430 F.3d at 1384.

with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).   On remand, the Federal Circuit did not revisit the patentee's secondary argument that claim 1 impermissibly mixed an apparatus and method.  *See Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1379-84 (Fed. Cir. 2015). For these reasons and those set forth in LogMeIn's opening brief, claim 11 and all claims dependent on it (claims 12-18) should be held invalid as indefinite for improperly mixing different classes of statutory subject matter.

### E.   "moderator"

| Disputed Term | Meetrix's Construction | LogMeIn's Construction |
|---|---|---|
| "moderator"<br>('525 patent, claims 1, 5, 9)<br>('332 patent, claims 1, 2, 3 & 5) | No construction necessary. | conference participant equipped to dial out to the PSTN client(s) or have the PSTN client(s) dial into it |

The only intrinsic evidence that Meetrix cites to support its contention "that a moderator is the initiator of a videoconference" contradicts that contention by confirming that the moderator *need not* be the initiator of the conference.  D.I. 59 at 10.  Meetrix cites the following statement, which is explicit that the moderator can be the call initiator or just a caller: "Now referring to FIG. 3, the voice over IP moderator 401 (call initiator **or caller**) typically has a number of peripherals used for real input output devices at the desktop."  *Id.* (quoting '332 patent at 4:54-55).  Rather than define the moderator as the call initiator, the patents-in-suit elsewhere confirm that the moderator may be (but need not be) the person who initiates the call.  *See* '525 patent at 7:20-21 ("The local moderator client 401 **may also be the initiator** of the meeting.").

As LogMeIn explained in its opening brief (*see* D.I. 60 at 15-17), the specification uses definitive language to describe the "moderator" as the conference participant equipped to dial out to the PSTN client(s) or to have the PSTN client(s) dial into it, per LogMeIn's construction.  *See*

'525 patent at 7:17-19 ("The embodiment of FIG. 6 includes a local moderator client 401 **who is**

**responsible** for initiating a dial out for audio conferencing to the PSTN client 412."); 7:49-56

("The local moderator client 401 **is equipped** with proprietary software, as depicted in FIG. 6, to

operate as a dial-out to PSTN application.… 'Dial-In' may be used in addition using the same

techniques outlined but in a reverse path scenario.").   Another passage of the specification

confirms that the moderator is the member of the conference who has the ability to dial out to a

telephone user.   *See id.* at 4:60-64 ("This [Figure 3] embodiment provides the ability for a

moderator (single member of the conference) to dial out from a desktop computer or terminal …

connecting an external telephone user's audio into the audio/video conference.").

Accordingly, LogMeIn's construction of "moderator"—"conference participant equipped

to dial out to the PSTN client(s) or have the PSTN client(s) dial into it"—"most naturally aligns

with the patent's description of the invention" and therefore is "the correct construction."

*Phillips*, 415 F.3d at 1316 (quoting *Renishaw PLC*, 158 F.3d at 1250).

F.    **"A non-transitory computer-readable medium including instructions for a multi-participant conference process to be executed by a local moderator computer"**

| Disputed Term | Meetrix's Construction | LogMeIn's Construction |
|---|---|---|
| "A non-transitory computer-readable medium including instructions for a multi-participant conference process to be executed by a local moderator computer" ('525 patent, claims <u>9</u>, 10, 11, 12, 13, 14, 15, & 16) | No construction necessary.  Preamble is not limiting. | Preamble is limiting: Software application for performing a multi-participant conference, which is persistently stored in a form a computer can read, that is run by a local moderator computer. |

Meetrix offers no argument to support its contention that the preamble of claim 9 of the '525 patent is not limiting.  *See* D.I. 59 at 11-12.[11]  As LogMeIn explained in its opening brief, the preamble of claim 9 is limiting because the phrase "a local moderator computer" in the preamble provides antecedent basis for "the local moderator computer" recited in the body of the claim and because the preamble's recitation of software being "executed by a local moderator computer" is emphasized as important in the specification.  *See* D.I. 60 at 17-18 (citing cases). Meetrix's failure to offer a counterargument is telling.  For the reasons previously advanced, should hold that the claim 9's preamble constitutes a claim limitation.

G.     **"audio-video [data] stream" and "mixed audio-video data"**

| Disputed Term | Meetrix's Construction | LogMeIn's Construction |
|---|---|---|
| "audio-video data stream" / "audio-video stream" ('525 patent, claims <u>1</u>, 2, 4, 5, & 7) | media data transmitted in a continuous fashion | a single stream of combined audio and video data |
| "mixed audio-video data" ('525 patent, claims <u>9</u>, 13, & 15) | No construction necessary | a mix of both audio and video data |

Meetrix does not attempt to justify its rewriting the claim term "audio-video data" to "media data."  *See* D.I. 59 at 13-14.  The Court should reject this rewrite because the hyphenated term "audio-video" by its plain language refers to audio *and* video, whereas "media data" is defined more broadly in the specification to refer to "audio, video, *or* data" (where "data" presumably refers to collaboration data).  '525 patent at 5:51-53; *see also* D.I. 60 at 20. Meetrix's proposal thus impermissibly transforms the hyphen in "audio-video" into an "or" by allowing just audio or video to satisfy the claim term, and further incorrectly permits collaboration data (that is neither audio nor video) to qualify as "audio-video data."

---

[11] Any argument Meetrix presents in its reply as to why the preamble should not be considered limiting should be stricken because Meetrix has denied LogMeIn an opportunity to brief a response here.  *See, e.g.*, *Novosteel SA*, 284 F.3d at 1274; *Docusign, Inc.*, 468 F. Supp. 2d at 1307; *Springs Indus., Inc.,* 137 F.R.D. at 239.

Meetrix raises three arguments against LogMeIn's construction, but none undermine it. First, Meetrix argues that the use of the term "single" in LogMeIn's construction is wrong because the article "a" means "one or more" in patent claims. The use of the term "single" in LogMeIn's construction, however, does not confine the claim terms to only one "stream of combined audio and video data." LogMeIn agrees that in theory there could be multiple streams (as long as the remaining claim elements are met), but *each* "audio-video stream" / "audio video data stream" must be "a single stream of combined audio and video data."[12]

Second, Meetrix relies on a dictionary definition to argue that having a data "stream" means "that information is sent in a relatively continuous fashion," criticizing that LogMeIn has not construed the term "stream." D.I. 60 at 13-14. This criticism is misdirected. LogMeIn has not proposed using other words to describe what a "stream" is because the word is a well-understood and need not be restated in different words.

Moreover, Meetrix's proposed language—"transmitted in a relatively continuous fashion"—does not define what the claimed "stream" is. For example, audio data might be "transmitted in a relatively continuous fashion" from a first participant along one data route while video data is "transmitted in a relatively continuous fashion" from a second conference participant along another data route, but these constitute separate audio and video data streams— not the claimed "audio-video data stream" / "audio-video stream." Based on the plain wording of the claim terms, to have the claimed "audio-video data stream" / "audio-video stream," the audio data from the first conference participant and the video data from the second conference

---

[12] LogMeIn would have no objection to the Court replacing "a single" with "an individual" in LogMeIn's construction, if the Court believes this would be helpful to convey that each stream must meet the claim requirements but there can be multiple streams that do so.

participant need to be combined into "a single stream of combined audio and video data," in accordance with LogMeIn's construction.

Finally, Meetrix misunderstands the only intrinsic evidence it cites in support of its argument that "audio-video" does not mean both audio and video.  In particular, Meetrix quotes from the description of the Figure 6 embodiment in the '525 patent at column 9, lines 13-20, and argues "[t]he significance of this description is that there is no mention of the video data from the moderator also being combined with the audio data from the PSTN client and the moderator." D.I. 59 at 14.  On this basis, Meetrix concludes that interpreting "audio-video" as "requiring the combination of audio and video in a strict sense is improper." *Id.*

Meetrix, however, has missed the important point that, when Figure 6 is initially introduced in the specification, the specification explains that, while "video accompanies the audio," the description of the video data flow is intentionally omitted "[f]or simplicity of illustration":

> FIG. 6 of the preferred embodiment shows the multiple network domains, the software applications and the operating system boundaries and the operations necessary for the audio manipulation and transport.  **It is noted that video accompanies the audio to all conference participants with the exception of the PSTN client 412.  For simplicity of illustration, FIG. 6 does not show the video conference path.**

'525 patent at 7:11-17.  This explains why there is no mention of the video data flow in the description of Figure 6 and why Meetrix is wrong to conclude, based on the lack of discussion of video data, that the patents-in-suit have somehow defined "audio-video" at odds with its plain meaning to refer to, *e.g.*, just audio data.

Meetrix does not present any additional argument against LogMeIn's construction of "mixed audio-video data."  *See* D.I. 59 at 14.  Therefore, for these reasons stated above and in LogMeIn's opening brief (*see* D.I. 60 at 19-20), the Court should construe "audio-video data

stream" / "audio-video stream" as "a single stream of combined audio and video data" and "mixed audio-video data" as "a mix of both audio and video data."

### H.   "first/second/third mixer"

| Disputed Term | Meetrix's Construction | LogMeIn's Construction |
|---|---|---|
| "first mixer" ('525 patent, claim 1) | No construction necessary | a mixer that is different from the second mixer |
| "second mixer" ('525 patent, claim 1) | | a mixer that is different from the first mixer |
| "third mixer" ('525 patent, claim 2) | | a mixer that is different from the first and second mixers |

Meetrix concedes that "[t]he use of the terms 'first' and 'second' is a common patent-law convention to distinguish between repeated instances of an element or limitation," but nevertheless argues that nothing in the intrinsic record requires the claimed first, second, and third mixers "to be physically distinct."  D.I. 59 at 12.  Meetrix, however, does not discuss any intrinsic evidence.  The plain claim language "first," "second," and "third" itself instructs that there are three physically distinct mixers.  *See Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1373 (Fed. Cir. 2005) ("The terms 'first, second, and third' are terms to distinguish different elements of the claim ….").  If Meetrix had intended to refer to one mixer capable of performing all the claimed functionality—logically, temporally, or otherwise—it could have claimed "a mixer" and then simply referred back to "the mixer" later in the claim and in dependent claims.  Instead, Meetrix chose to "distinguish" the mixers and claim three "different" mixers using "[t]he terms 'first, second, and third.'"  *Id.* at 1373.

Meetrix's decision to claim three distinct mixers is unsurprisingly because, as LogMeIn explained in its opening brief, the specification discloses three separate mixers for mixing different combinations of data.  *See* D.I. 60 at 21-23 (citing '525 patent at 3:47-50; 3:54-56; 8:59-9:40; Fig. 6); *see also Phillips*, 415 F.3d at 1315 (the specification "is the single best guide"

to a term's meaning). There is no description anywhere in the specification of one mixer which performs the functionality of the claimed "first," "second," and "third" mixers.

Finally, Meetrix relies on *j2 Glob. Commun., Inc. v. Venali, Inc.*, No. CV 04–01172 DDP (AJWx), 2011 WL 3204537 (C.D. Cal. Mar. 4, 2011), but this district court case is inapposite. It did not involve claim elements distinguished by use of adjectives such as "first" and "second." That case also did not involve any teachings in the specification similar to those here, namely that three claimed mixers perform distinct mixing functions.

Accordingly, the Court should construe the "first mixer," "second mixer," and "third mixer" to make clear that, per LogMeIn's constructions, these are three different mixers. This is what the intrinsic evidence, including the plain claim language, teaches.

## I.     first/second/third mixed data stream and first/second/third mixed audio data

| Disputed Term | Meetrix's Construction | LogMeIn's Construction |
|---|---|---|
| "first mixed data stream" ('525 patent, claim 1) | No construction necessary | data stream that only contains a mix of both the PSTN client audio data stream and the moderator audio-video data stream |
| "second mixed data stream" ('525 patent, claims 1, 6, & 8) | | data stream that only contains a mix of both the moderator audio-video data stream and the remote client audio-video data stream |
| "third mixed data stream" ('525 patent, claim 2) | | data stream that only contains a mix of both the audio data from the PSTN client and the audio-video data stream from the remote client |
| "first mixed audio data" ('332 patent, claims 1 & 6) | No construction necessary | audio data that only contains a mix of both the first audio data from the PSTN client(s) and the second audio data from the moderator |
| "second mixed audio data" ('332 patent, claims 1 & 7) | | audio data that only contains a mix of both second audio data from the moderator and the third audio data from the remote client(s) |

| "third mixed audio data" ('332 patent, claim 2) | | audio data that only contains a mix of both the first audio data from the PSTN client(s) and the third audio data from the remote client(s) |
|---|---|---|

The first/second/third mixed data streams and first/second/third mixed audio data refer to three different data streams and three different mixed audio data, respectively, for the same reasons LogMeIn has explained for the first/second/third mixers.

Meetrix complains that LogMeIn's constructions "improperly narrow the phrase by precluding any other data whatsoever in the data stream." D.I. 59 at 15. Meetrix, however, does not identify any data that it contends has been improperly excluded. Throughout the specification and claims, the patents-in-suit only refer to data from three sources: PSTN clients, remote clients, and the moderator. *See* '525 patent at claims 1, 2, 6, 7 & 8; 3:33-43; 3:54-59; 8:61-9:40. LogMeIn's constructions properly reflect that, throughout the intrinsic evidence, the mixed data received by a recipient never contains the recipient's own data but rather only data from the two other sources. *See id.*; *see also* D.I. 60 at 24-25.

That only two sources of data, and not the recipient's own data, are included in the mix that the recipient receives is an important aspect of the alleged invention. *See Phillips*, 415 F.3d at 1316 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.") (quoting *Renishaw*, 158 F.3d at 1250). The alleged invention's approach prevents a recipient from suffering feedback by receiving his or her own data (*i.e.*, his or her own voice). Undoing the patentee's consistent teachings that each of the three mixers provides a mix of two data sources to a recipient—and this mix does not include the recipient's own data—would be inconsistent with how the alleged invention is designed to operate, and such a claim interpretation is

disfavored.  *See Gemalto SA v. HTC Corp.*, 754 F.3d 1364, 1369 (Fed. Cir. 2014) (rejecting the patentee's contention that application could be "stored in off-chip memory," explaining, "The specification demonstrates that the entire purpose of the invention was to enable the application to be stored within the memory on the chip of the integrated circuit card."); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1335 (Fed. Cir. 2010) (rejecting a claim construction as "too broad" because it "ignore[d] the power saving purpose of the invention and [wa]s not supported by the specification").

## III.    CONCLUSION

For the foregoing reasons and for the reasons set forth in LogMeIn's opening brief, LogMeIn respectfully requests that the Court adopt LogMeIn's constructions and, further, that the Court hold claim 11 of the '997 patent and its dependent claims invalid as indefinite.


DATED: September 11, 2017                    Respectfully submitted,

                                         By:   */s/ Charles H. Sanders*
                                                  Steve Wingard
                                                  TX State Bar No. 00788694
                                                  swingard@scottdoug.com
         Paige Arnette Amstutz
         TX State Bar No. 00796136
         pamstutz@scottdoug.com
         SCOTT, DOUGLASS & MCCONNICO LLP
         303 Colorado Street, Suite 2400
         Austin, Texas 78701-3234
         Tel.: (512) 494-6300
         Fax: (512) 495-6399

         Charles H. Sanders (*Pro Hac Vice*)
         *charles.sanders@lw.com*
         William J. Trach (*Pro Hac Vice*)
         *william.trach*@lw.com
         Nathanial J. McPherson (*Pro Hac Vice*)
         *nathanial.mcpherson@lw.com*
         LATHAM & WATKINS LLP
         John Hancock Tower, 27th Floor

200 Clarendon Street
Boston, MA 02116
Tel.: (617) 948-6000
Fax: (617) 948-6001

Gabriel K. Bell (*Pro Hac Vice*)
*gabriel.bell@lw.com*
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.
Suite 1000
Washington, D.C. 20004-1304
Tel.: (202) 637-2200
Fax: (202) 637-2201

*Attorneys for Citrix Systems, Inc.,*
*LogMeIn, Inc. and GetGo, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule 5(b)(2)(E) on September 11, 2017.  As of this date, all counsel of record had consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule 5(b)(2)(E) and by email.

*/s/ Steve Wingard*
Steve Wingard